Roya **NOORIAN**, as Next Friend and Natural Parent of Mona Noorian, Arta Noorian, Alex Noorian, and Ariana Noorian, Minor Children, Appellant,

v.

Robert G. **McCANDLESS**,
M.D., Appellee.

No. 01–99–00169–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 2001.

Myriam Klein Legge, Alexander B. Klein, III, Houston, for appellant.

Suzan K. Cardwell, Jeffrey D. Meyer, Houston, for appellee.

Panel consists of Justices MIRABAL, WILSON, and NUCHIA.

## OPINION

WILSON, Justice.

Appellant Roya Noorian appeals from the trial court's order dismissing all claims against appellee Robert G. McCandless, M.D. with prejudice. We must determine if this Court has jurisdiction to hear the appeal, and if so, whether the trial court has rendered a proper judgment. We affirm.

## Facts

On March 11, 1995, Roya and her mother-in-law and father-in-law[1] sued multiple defendants[2] over her husband Bijan Noo-

rian's death. Bijan died of lung cancer on January 5, 1995, and Roya claimed the defendants were negligent in their diagnosis and treatment.

On September 20, 1996, the trial court rendered a partial summary judgment in favor of defendant Houston Imaging Center, Inc. and against Roya "in all capacities," Tahereh Noorian, and Habibbollah Noorian. On October 4, 1996, Roya, as next friend of her minor children, signed a settlement agreement and release with Respiratory Consultants and Doctors Berger, Lloyd, Casar, and Miller, in which the settling defendants' insurer paid $700,000. On October 7, 1996, the trial court rendered a partial summary judgment that Roya, in her individual capacity and as independent executrix of Bijan's estate, take nothing from the settling defendants. On October 9, 1996, the trial court approved the October 4, 1996 settlement and signed an agreed interlocutory judgment discharging the settling defendants from any further liability in the case and dismissing with prejudice the claims of Tahereh and Habibbollah. On October 18, 1996, the trial court signed an amended agreed interlocutory judgment, which also dismissed Tahereh's and Habibbollah's claims against the settling defendants.

On February 5, 1997 and just before trial, the plaintiffs signed a settlement agreement with McCandless. In this settlement, McCandless' insurer, Insurance Corporation of America ("ICA"), on behalf of McCandless, agreed to pay the four minor children (Mona Noorian, Arta Noorian, Alex Noorian, and Ariana Noorian) a total of $700,000 on the date of the settlement hearing, on or before March 5, 1997. In exchange, plaintiffs agreed (1) to release, discharge, and indemnify McCand-

---

1. The plaintiffs were: Roya Noorian, both individually and as next friend and natural parent of her minor children Mona Noorian, Arta Noorian, Alex Noorian, and Ariana Noorian; Tahereh Noorian; and Habibbollah Noorian.

2. The defendants were: Respiratory Consultants of Houston, P.A.; Mark B. Berger, M.D.;

K. Scott Lloyd, M.D.; Gregorio I. Casar, M.D.; David H. Miller, M.D.; Robert G. McCandless, M.D.; The Methodist Hospital; Houston Imaging Center, Inc.; and Amy Elizabeth Connelly, administrix of the estate of James William Connelly, M.D., deceased.

less and ICA from any claims related to the lawsuit and (2) to file an agreed motion to dismiss their claims against McCandless with prejudice.[3] On February 18, 1997, Roya, as next friend of her minor children, nonsuited Methodist Hospital. On February 21, 1997, the trial court held a hearing to approve the settlement for the minor children. The trial court orally approved the settlement:

> THE COURT: All right, [counsel for plaintiffs], crossed all your T's and dotted all your I's.
>
> [COUNSEL FOR PLAINTIFFS]: Thank you, Judge.
>
> THE COURT: Court will approve the settlement as to that.

The settlement agreement was neither dictated into the record nor offered and admitted as an exhibit. In two separate orders also signed on February 21, 1997, the trial court rendered summary judgment (1) that Roya (in her individual capacity), take nothing against McCandless and (2) that Roya (in her individual capacity), Tahereh, and Habibbollah take nothing against Methodist Hospital.

On March 5, 1997, the trial court signed an order stating in part:

> It is ORDERED, ADJUDGED, and DECREED that absent an Order, currently in effect, signed on or before March 5, 1997 by or through the Texas State Board of Insurance ordering ICA not to pay claims, ICA shall issue a check to Plaintiffs in the above-referenced matter for $690,000.00. This check shall be delivered to counsel for Plaintiffs per the terms of the settlement agreement entered into by the parties herein and approved by the Court on February 21, 1997.

No formal written agreed judgment was ever signed, yet the parties acted as though a final judgment had been rendered in the case.

The Texas Department of Insurance placed ICA into conservatorship on March 4, 1997. A Travis County district court eventually placed ICA into receivership, and ICA never funded the settlement. ICA was later acquired by PIE Mutual Insurance Company and PIE Mutual's parent corporation, PIE Financial Corporation. Roya, in both her individual capacity and as next friend of her minor children, sued PIE Mutual and PIE Financial in federal court for, among other things, breach of contract. *Noorian v. PIE Mut. Ins. Co.*, 978 F.Supp. 690 (S.D.Tex.1997). Roya eventually settled this lawsuit for $400,000.

In April 1998, the plaintiffs filed an application for turnover relief directed at McCandless for the $300,000 deficiency, apparently believing a final judgment had been rendered and execution on that judgment was proper. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1997) (authorizing turnover order). On April 16, 1998, McCandless responded and requested a protective order based on the February 21, 1997 take-nothing judgment. On May 4, 1998, the trial court denied the application for turnover relief and granted the protective order, prohibiting the plaintiffs from any collection activity or discovery as to McCandless.

On August 27, 1998, the plaintiffs filed a motion to dissolve the protective order, arguing that they were entitled to post-judgment discovery under Texas Rule of Civil Procedure 621a and that the trial court's March 5, 1997 order constituted an agreed judgment. On October 30, 1998, McCandless moved to enforce what he described as the February 21, 1997 and March 5, 1997 agreed judgment, in which McCandless claimed the plaintiffs released him from all liability. On November 10, 1998, the plaintiffs filed an amended motion to dissolve the protective order. On November 23, 1998, the trial court signed

---

**3.** The appellate record does not contain a copy of the settlement agreement except as an exhibit to other documents. It, therefore, does not appear that the agreement was filed with the district clerk as a rule 11 agreement. *See* TEX.R.CIV.P. 11.

an order dismissing all claims against McCandless with prejudice. On December 22, 1998, the plaintiffs filed a motion for new trial.

On January 5, 1999, the trial court signed two orders (1) granting all the plaintiffs' nonsuit of Methodist Hospital and (2) granting all the plaintiffs' nonsuit of Houston Imaging, Inc. On February 17, 1999, Roya filed a notice of appeal as next friend of the minor children.

## Discussion

### *Appellate Jurisdiction*

■ McCandless challenges this Court's jurisdiction on the basis that the trial court's February 21, 1997 oral approval of the settlement constituted rendition of a final judgment. McCandless also claims that Roya has judicially admitted that the February 21, 1997 judgment was a final judgment. We disagree.

Even if we assume that the trial court's brief February 21, 1997 statement was an oral rendition of judgment, it certainly was not a written judgment. The appellate timetables run from the signing date of whatever order makes the judgment final and appealable, *i.e.*, whatever order disposes of any parties or issues remaining in the appeal. *Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex.1995); *see* Tex. R.Civ.P. 329b; Tex.R.App.P. 26.1. The March 5, 1997 order was not a final judgment, either, as it did not dispose of any parties or issues.

■ McCandless also claims that Roya's notice of appeal is defective because it specifically refers to the November 23, 1998 order when Roya is complaining about the February 21, 1997 "agreed judgment." While it is true that Texas Rule of Appellate Procedure 25.1(d)(2) requires an

appealing party to state "the date of the judgment or order appealed from," McCandless ignores the fact that a final judgment may consist of several orders that cumulatively dispose of all parties and issues. Even though the date of the final judgment in this case is January 5, 1999, not November 23, 1998, the error is not jurisdictional.[4] *See* Tex.R.App.P. 25.1(f) (allowing for amended notice of appeal to correct defects or omissions).

There is, however, another potential jurisdictional problem in this appeal. Based on the appellate record, the following claims have not been disposed of: (1) Roya's individual claims against Connelly; (2) Roya's claims as next friend of her minor children against Connelly; and (3) Tahereh Noorian's and Habibbollah Noorian's claims against Connelly. McCandless suggests that the Mother Hubbard clause in the November 23, 1998 order disposes of the remaining claims against Connelly. *See Mafrige v. Ross*, 866 S.W.2d 590, 590 n. 1 (Tex.1993) (discussion of Mother Hubbard clauses in summary judgment orders). We agree.[5]

### *Merits*

In point of error one, Roya contends the trial court erred in prohibiting her from any collection activity on the agreed judgment. Implicit in her argument is an assertion that the trial court *has* rendered a judgment in this case as between Roya and McCandless that incorporates the February 5, 1997 settlement.

Roya relies on *Samples Exterminators v. Samples* for the proposition that an agreed judgment is in fact rendered when the trial court announces its decision in open court. 640 S.W.2d 873, 875 (Tex. 1982). We agree with this statement of the law, but hold it does not apply to the

---

4. These nonsuit orders were signed within the trial court's plenary jurisdiction. *See Owens– Corning Fiberglas Corp. v. Wasiak*, 883 S.W.2d 402, 411 (Tex.App.—Austin 1994, order), *disp. on merits*, 917 S.W.2d 883 (Tex.App.—Austin 1996), *aff'd on other grounds*, 972 S.W.2d 35 (Tex.1998).

5. In addition, we note that Roya's docketing statement indicates that Connelly was never served with citation.

facts of this case. In *Samples*, the trial court made the following comments on the record:

It appearing to the Court that all of you did agree in open court to this settlement, the Court approves the settlement made in open court and orders all parties to sign any and all papers necessary to carry out this agreement and to carry out the agreement that was made and dictated into the record.

*Id.,* 640 S.W.2d at 874.

■ In this case, the trial court only said the following:

THE COURT: All right, [counsel for plaintiffs], crossed all your T's and dotted all your I's.

[COUNSEL FOR PLAINTIFFS]: Thank you, Judge.

THE COURT: Court will approve the settlement as to that.

As we have already noted, the settlement agreement was neither dictated into the record nor offered and admitted as an exhibit. In addition, there was testimony at the hearing about the trust arrangements for the monies to be paid the minor children, but this information is not included in either the settlement agreement or in any oral or written order by the trial court. *See* Tex.Prop.Code Ann. § 142.001 (Vernon 1995) (allowing trial court to provide for investment of funds accruing to minor). We hold under these facts that the trial court did not render an oral or written agreed judgment.

Although the March 5, 1997 order makes it clear that the trial court contemplated rendering an agreed judgment ("This check shall be delivered to counsel for Plaintiffs per the terms of the settlement agreement entered into by the parties herein and approved by the Court on February 21, 1997."), no such written judgment was ever signed. In fact, the February 5, 1997 settlement agreement between plaintiffs and McCandless was never incorporated into the judgment. Accordingly, we hold the trial court did not err in

prohibiting Roya from any collection activity on the judgment based on the February 5, 1997 settlement agreement, because there is nothing in the judgment to enforce. The plaintiffs' remedy was to sue for breach of contract, not for enforcement of the judgment.

We overrule point of error one.

■ In point of error two, Roya contends the trial court erred by dismissing all her claims against McCandless even if the agreed judgment was ineffective. Roya contends the settlement was breached by ICA's failure to fund the settlement. *See generally Tindall v. Bishop, Peterson & Sharp, P.C.,* 961 S.W.2d 248, 251 (Tex. App.—Houston [1st Dist.] 1997, no writ) (ineffectiveness of agreement as rule 11 agreement did not preclude enforcement under contract law).

Roya directs us to cases such as *Price v. Appalachian Resources Co.* in which the court held it would presume that mutual promises given in a contract are dependent. 496 S.W.2d 136, 138–39 (Tex.Civ. App.—Tyler 1973, no writ). The rationale for this presumption is to prevent one party from having the benefit of the contract without performing. *Id.* at 139. Although we agree with this general statement of contract law, we do not agree with Roya's application of the law to this case.

The mutual promises given in the settlement agreement were (1) ICA agreed on behalf of its insured, McCandless, to pay $700,000 (of which $670,000 was to go to the four minor children) and (2) plaintiffs agreed (a) to release, discharge, and indemnify McCandless and ICA from any claims related to the lawsuit and (b) to file an agreed motion to dismiss their claims against McCandless with prejudice. There was no express condition precedent in the settlement agreement that plaintiffs' promises were dependent on the four minor children actually receiving the $670,000. Nonetheless, plaintiffs did receive a benefit from the settlement agreement—the ability to bring a direct action

against ICA, which they did in federal court.

Accordingly, we hold the trial court did not err in dismissing Roya's claims against McCandless based on the settlement agreement. We overrule point of error two.

### Conclusion

We affirm the judgment of the trial court.

MIRABAL, Justice, dissenting.

I dissent.

The majority opinion ignores the fact that, because the plaintiffs involved in this appeal are *minors*, the only settlement that could be effective was the settlement *approved by the trial judge*. See TEX. R.CIV.P. 44; *Rexroat v. Prescott*, 570 S.W.2d 457, 459 (Tex.Civ.App.—Amarillo 1978, writ ref'd. n.r.e.), In the present case, the settlement approved by the trial judge failed to materialize; therefore, there was no settlement of all of the minor's claims against Dr. McCandless. Thus, McCandless's motion to enforce the non-existent settlement should have been denied, and the trial court erred when it dismissed the minors' claims against McCandless based on the non-existent settlement.

It is uncontested that Dr. McCandless and the representative for the minor plaintiffs signed a settlement agreement dated February 5, 1997, that states in part:

**SETTLEMENT AGREEMENT**

The parties hereto agree to settle all claims and controversies between them in this lawsuit according to the following terms:

1. ICA, on behalf of Dr. Robert McCandless agrees to pay the 4 minor children the total sum of $670.000.00 dollars ... *on the date of the minor settlement hearing*....

....

4. All plaintiffs agree to release, discharge, indemnify and forever hold Dr. Robert McCandless ... harmless from any and all claims, demands, or suits ... arising fro, or related to the events and transactions which are the subject of this case....

(Emphasis added.)

As is clear from the above language, the representative for the minors did not agree to release the minors' claims against McCandless based on the *mere promise* by ICA to pay $670,000; rather, paragraph one specifically provides the $670,000 is to be *paid* upon the settlement agreement becoming effective, i.e., "on the date of the minor settlement hearing." Without the approval of the trial judge at the minor settlement hearing, there was no settlement and therefore no agreement to release and discharge the minors' claims against McCandless. The parties clearly intended that, simultaneously with the trial judge's approval of the settlement agreement, the $670,000 would be paid.

At the February 21, 1997 minor settlement hearing, the mother of the four minor plaintiffs testified about the agreement, stating:

Q. [By counsel]: [I] represent Dr. McCandless. I want to make you understand that the money ICA *has paid* on behalf of Dr. McCandless in this lawsuit is all the money that your children will ever receive. Do you understand that?

A. [By Mrs. Noorian]: Yes, I do.

Q. And that as a result of this money *being paid* that your children have released all claims and causes of action that they may have against Dr. McCandless. You understand that?

A. That's right, I do.

(Emphasis added.)

The record is clear that the trial judge approved a settlement based on the four minor children having been *paid* $670,000. The trial judge did not approve a settle-

ment, whereby all the minors' claims against McCandless were released, based on a *mere promise* by McCandless's insurance company to pay the money. Because the insurance company did not in fact pay the $670,000, there was no settlement; the only "settlement" was the one approved by the judge. *See* Tex.R.Civ.P. 44; *Rexroat*, 570 S.W.2d at 459.

Accordingly, the trial court erred in dismissing the minors' claims against McCandless with prejudice. We should sustain point of error two, reverse the judgment, and remand the minors' claims against McCandless to the trial court.