Affirmed and Memorandum Opinion filed September 7, 2004









Affirmed and Memorandum Opinion filed September 7,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00977-CV

____________

 

HERBERT
N. LACKSHIN, Appellant

 

V.

 

CHRIS A.
SPOFFORD AND CHRIS A. SPOFFORD, P.C., Appellees

____________________________________________________________

 

On Appeal from the 308th District Court

Harris County, Texas

Trial Court Cause No. 02-02466

____________________________________________________________

 

M E M O R A N D U M   O P I N I O N

This is an attorney-immunity case
in which appellant Herbert N. Lackshin asserts that the trial court erred in
dismissing his fraud, conspiracy to defraud, and conversion claims against
appellees Chris A. Spofford and Chris A. Spofford, P.C. based on Spofford=s alleged
immunity, as a lawyer, arising from the legal representation of Lackshin=s former
wife in the couple=s
divorce.  Because we conclude that
Lackshin=s claims
do not fall within an exception to the attorney immunity doctrine, we affirm
the trial court=s
judgment.








I.  Factual and Procedural Background

On
January 18, 2002, appellant Herbert N. Lackshin (AHerbert@) and his
wife, Pataricia Kay Lackshin (APataricia@) had
been separated for several months and Patricia was aware that Herbert intended
to filed a petition for divorce in the near future.  On that date, Pataricia met with attorney
Chris A. Spofford.[1]  Pataricia retained Spofford as counsel for
the anticipated divorce proceeding.  She
signed a contract with Spofford regarding his professional services as her
attorney.  This contract provided for a
$40,000 retainer.  Pataricia presented
Spofford with nine credit cards on which she had joint signature authority with
Herbert.  Pataricia told Spofford she was
concerned that the credit lines on these cards had been cancelled or soon would
be cancelled.  According to Spofford=s
testimony, A[Pataricia] therefore authorized
me to charge each card to it=s [sic]
limit to assure sufficient money for her representation in her divorce.  It was also agreed that certain moneys would
be refunded to her as necessary which she could hold for future fees.@  After determining that the nine credit cards
had not been cancelled, Spofford charged a total amount of $68,408 to Chris A.
Spofford, P.C.  According to Spofford=s
testimony, Spofford later credited two of the cards in the total amount of
$6,462.  Spofford also admits that he Arefunded@ a total
of $11,000 to Pataricia.  

On or about January 22, 2002,
Herbert filed a divorce action against Pataricia.  In June of 2002, Pataricia terminated
Spofford as her attorney.  On December
13, 2002, the trial court signed a final divorce decree. According to Herbert,
this final divorce decree ordered him to pay $32,346 of the Spofford
credit-card charges.  








Herbert filed this lawsuit
against Spofford asserting the following factual allegations:[2]

!         On or about January 18, 2002, without Herbert=s knowledge and consent
and notwithstanding the fact that the agreed retainer was only $40,000,
Spofford submitted to nine credit-card companies charges for legal fees
totaling $68,408, charging to the available credit limit on each card.  

!         On January 18, 2002, Spofford paid Pataricia $1,000 in cash
from monies received from these credit-card charges.

!         On January 25, 2002, Spofford cancelled the charges on a
credit card so Pataricia could have a credit card with available credit to use.

!         Spofford later paid Pataricia an additional $10,000 in cash
out of the proceeds from the credit-card charges.

!         Spofford=s true intent was to use the credit-card
collections as a Abank@ for Pataricia during the
divorce.

!         As a result, Herbert sustained damages to his credit rating
and is now obligated to pay the credit-card companies in excess of $30,000.

 

Herbert asserted a fraud claim
against Spofford based on Spofford=s
allegedly false and fictitious legal fee charges against Herbert=s
credit-card accounts substantially in excess of the retainer agreement.  Herbert also asserted that a substantial
portion of these legal-fee charges were not made for goods and services as
represented by Spofford.  Additionally,
Herbert alleged Spofford conspired with Pataricia to perpetuate a fraud by
creating fictitious legal-fee charges which were charged against Herbert=s
credit-card accounts for the benefit of Spofford, so that Spofford could act as
Pataricia=s bank during the divorce action.
Herbert also alleged Spofford converted his funds by charging his credit cards
for legal fee charges in excess of Spofford=s
retainer agreement.








Spofford filed a traditional
motion for summary judgment.  In this
motion, the only ground for relief that Spofford asserted was absolute immunity
from suit because, when Spofford engaged in the allegedly actionable conduct,
Spofford was allegedly representing Pataricia in a matter in which Herbert was
the opposing party.  

On April 11, 2003, the trial
court granted Spofford=s motion
for summary judgment. Herbert timely filed a notice of appeal, although the
notice incorrectly states that the trial court signed its judgment on April 10,
2003.

II. Issue Presented

On appeal, Herbert asserts the
trial court erred in granting Spofford=s motion
for summary judgment.

III.  Standard
of Review

Summary judgment is appropriate
when all elements of an affirmative defense are established as a matter of
law.  See Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 
In reviewing the trial court=s summary
judgment, we take all evidence favorable to Herbert as true, and indulge every
reasonable inference in his favor.  Id.

IV.  Analysis

A.        Does this court lack appellate
jurisdiction based on an incorrect date in Herbert=s notice of appeal?








As a threshold matter, Spofford
asserts that we lack appellate jurisdiction because the notices of appeal filed
by Herbert state the trial court judgment was signed on April 10, 2003, when it
actually was signed on April 11, 2003. 
The only authority Spofford cites for this argument is the part of the
rules of appellate procedure that requires the notice of appeal to state the
date of the judgment from which the appeal is taken.  See Tex.
R. App. P. 25.1 (d)(2).  We
conclude that Herbert=s error
as to the date of the trial court=s
judgment does not deprive this court of appellate jurisdiction.  See Noorian v. McCandless, 37 S.W.3d
170, 173 (Tex. App.CHouston
[1st Dist.] 2001, pet. denied) (holding that notice of appeal=s
erroneous statement of the final judgment=s date
does not deprive the appellate court of jurisdiction); Griggs v. Wood,
2001 WL 987906, at *1 (Tex. App.CHouston
[14th Dist.] Aug. 30, 2001, no pet.) (not designated for publication) (holding
that notice of appeal=s failure
to state the final judgment=s date
does not deprive the appellate court of jurisdiction). 

B.        Did the trial court err in granting
summary judgment based on Spofford=s claim of attorney
immunity from suit?








The only ground in Spofford=s motion
and the ground specified in the trial court=s
judgment is that Spofford has attorney immunity from suit because, when
Spofford engaged in the allegedly actionable conduct, Spofford was allegedly
providing legal representation to Pataricia in a matter in which Herbert was
the opposing party. Though attorneys owe no general negligence duty to opposing
parties,[3]
they are still subject to liability to nonclients, including opposing parties,
based on their fraudulent or malicious conduct, even if the attorneys= conduct
was in the course of representing their client. 
Poole v. Houston & T.C. Ry., 58 Tex. 134, 137 (Tex. 1882)
(holding that attorneys acting on behalf of their clients are not shielded from
liability for their fraudulent conduct because fraudulent acts are Aentirely
foreign to the duties of an attorney@); Toles
v. Toles, 113 S.W.3d 899, 911B12 (Tex.
App.CDallas
2003, no pet.) (holding that attorney who represented former husband in divorce
action was not immune from claim of former wife alleging attorney aided and
abetted a breach of fiduciary duty); Querner v. Rindfuss, 966 S.W.2d
661, 666-670 (Tex. App.CSan
Antonio 1998, pet. denied) (finding attorney in probate litigation was not
immune from liability for alleged conspiracy to engage in fraud); Likover v.
Sunflower Terrace II, Ltd., 696 S.W.2d 468, 472 (Tex. App.CHouston
[1st Dist.] 1985, no writ) (holding that attorney may be liable to opposing
party in a transaction for conspiracy to defraud the opposing party because
attorney immunity does not apply to attorney=s
allegedly fraudulent or malicious conduct). 








Courts of appeals have differed
in how they treat assertions of attorney immunity and alleged exceptions to
this doctrine.  If defendants prove as a
matter of law that their allegedly actionable conduct was undertaken in the
representation of a third-party client, then they have shown their entitlement
to summary judgment on all claims, except for alleged torts based on fraudulent
or malicious conduct.  See Toles,
113 S.W.3d at 911B12; Mendoza
v. Fleming, 41 S.W.3d 781, 787 (Tex. App.CCorpus
Christi 2001, no pet.); Chapman Children=s Trust
v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 441B42 (Tex.
App.CHouston
[14th Dist.] 2000, pet. denied). 
However, courts of appeals differ as to how they handle the assertion by
plaintiffs of an exception to attorney immunity.  The Dallas Court of Appeals has indicated
that, if the only ground for summary judgment is attorney immunity, then all
that the plaintiffs need to do to fall within an exception is to allege a claim
that purports to be an intentional tort based on fraudulent or malicious
conduct.  See Toles, 113 S.W.3d at
911B13.  If plaintiffs purport to allege these claims,
then, under this approach, the trial court should deny a motion for summary
judgment based on attorney immunity as to these claims, and if the defendant
believes that these alleged claims are deficient, the defendant should assert a
motion for summary judgment attacking the merits of these claims.  See Toles, 113 S.W.3d at 911B12.  The Corpus Christi Court of Appeals has held
that part of the defendant=s burden
in moving for summary judgment in reliance on attorney immunity is to
conclusively prove that the attorney=s alleged
wrongful conduct does not fall within an exception to attorney immunity.  Mendoza, 41 S.W.3d at 787. On the
other hand, once a defendant has filed a motion for summary judgment asserting
immunity and proving as a matter of law that the allegedly actionable conduct
was undertaken in the legal representation of a third-party client, this court
has required the plaintiff to either raise a fact issue as to whether that
conduct was undertaken in the representation of a third-party client or plead
sufficient facts to show that the plaintiff asserts one or more claims that
fall within an exception to attorney immunity. 
See Chapman Children=s Trust, 32
S.W.3d at 441B42.  Therefore, under this court=s
precedent, we must determine (1) if the summary-judgment evidence conclusively
proves that Spofford=s
allegedly actionable conduct occurred during his legal representation of
Pataricia; and (2) if so, whether Herbert alleged sufficient facts in his petition
to show that Spofford committed fraud C the
exception asserted by Herbert.

1.         Did
the summary-judgment evidence conclusively prove that Spofford=s allegedly actionable
conduct occurred during the legal representation of Pataricia?








On
appeal, Herbert asserts that Spofford=s actions
were outside the scope of his legal representation of Pataricia because the
divorce action had not yet been filed when Spofford made these charges on
Pataricia and Herbert=s credit
cards.  Herbert also asserts that, rather
than acting as her attorney, Spofford was allegedly acting as Pataricia=s bank
when he made these charges in excess of the agreed retainer amount and when he
refunded $11,000 of these charges to Patarcia. 
The material facts are not disputed. 
On January 18, 2002, Pataricia was aware that Herbert intended to file a
petition for divorce in the near future, and she retained Spofford as her
counsel, entering into a written agreement that provided for a $40,000
retainer.  Pataricia had signature
authority and the right to use the nine credit cards in question when she
authorized Spofford to charge $68,408 on these credit cards.  Four days later, Herbert filed the
anticipated divorce suit against Pataricia, and Spofford represented her in
that legal proceeding until June of 2002. 
Spofford refunded $11,000 to Pataricia at her request.  Although the actions of Spofford did not take
place in a courtroom, Spofford was charging a client for a retainer and
refunding part of that retainer to his client. 
In making fee arrangements and collecting and charging fees to clients,
attorneys are conducting activities regarding the representation of their
client, during which they owe their clients duties.  See Piro v. Sarofim, 80 S.W.2d 717,
718B19 (Tex.
App.CHouston
[1st Dist.] 2002, no pet.) (stating that, before parties settled, court of
appeals had affirmed three-million dollar judgment against divorce attorneys
based on their breaching their fiduciary duty to client by charging excessive
fees); Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 22 (Tex. App.CTyler
2000, pet. denied) (affirming finding that divorce attorneys breached their
fiduciary duty to client by manner in which attorneys handled billing and fee
arrangements).  We conclude that, under
the undisputed summary-judgment evidence, Spofford took these actions as part
of his legal representation of Pataricia in regards to the impending or pending
divorce action.   

2.         Did Herbert allege
sufficient facts in his petition to show that Spofford committed fraud?

Taking all of the factual
allegations in Herbert=s
petition as true, we must next decide if Herbert alleged sufficient facts to show
that Spofford committed fraud or conspired to defraud Herbert.  See Chapman Children=s Trust, 32
S.W.3d at 441B42.    We conclude that Herbert has not alleged
such facts to show that he is under the fraud exception to the attorney
immunity doctrine.  It is undisputed that
Pataricia had the legal authority to charge $68,408 to the nine credit cards in
question and that she consented to Spofford charging this total amount. Herbert
has not asserted that he relied on any alleged misrepresentation of Spofford to
his detriment.  Though Herbert was not
aware of the credit-card charges at the time they were incurred, he disputed
the charges after receiving the bills. 
Because Patricia had properly incurred these charges, Herbert=s dispute
was unsuccessful. 








Herbert seems to argue that
Spofford=s actions
were fraudulent because Spofford charged more than the $40,000 initial retainer
provided for in his contract with Pataricia. 
However, because Pataricia agreed to Spofford=s
actions, she effectively agreed to increase the retainer amount to
$68,408.  This does not make Spofford=s charges
fraudulent as to Herbert.  Herbert also
indicates that the refund of $11,000 shows fraud.  However, even if we presume that Spofford and
Pataricia agreed in advance that Spofford would refund $11,000, Herbert has
still not alleged detrimental reliance on an intentional misrepresentation by
Spofford.  Furthermore, the trial court
in the divorce decree reduced the amount of the charges that Herbert had to pay
by $29,600, significantly more than this $11,000.  In sum, we conclude that Herbert has not
pleaded sufficient facts to place his claims within an exception to the
attorney immunity doctrine on which Spofford sought summary judgment.  See Chapman Children=s Trust, 32
S.W.3d at 441B42.    

V.  Conclusion

Spofford moved for summary
judgment asserting the affirmative defense of attorney immunity.  The summary-judgment evidence conclusively
proved that Spofford=s
allegedly actionable conduct occurred during his legal representation of a
client (Pataricia).  Because Herbert did
not allege sufficient facts to show that Spofford=s alleged
conduct falls within an exception to this affirmative defense, the trial court
did not err in granting summary judgment. 
Accordingly, we overrule Herbert=s sole
issue on appeal and affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed September 7, 2004.

Panel consists of Justices Edelman, Frost, and Seymore.

 

 











[1]  For ease of
reference, appellees Chris A. Spofford and Chris A. Spofford, P.C. are
sometimes referred to herein collectively as ASpofford.@





[2]  In prior
petitions, Herbert asserted additional claims against Spofford for rescission,
unjust enrichment, negligence, and forfeiture. 
However, Herbert removed these claims from his Third Amended Petition,
and he currently asserts only claims for fraud, conspiracy to defraud, and
conversion.  





[3]  Despite the
absence of a general negligence duty as to nonclients, attorneys may be liable
to nonclients for negligent misrepresentation. 
See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,
991 S.W.2d 787, 791B94 (Tex. 1999).