**AFFIRMED; Opinion Filed June 16, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01329-CV

**ALBERT LUTTERODT, Appellant**

**V.**

**EMILY LANE OWNERS ASSOCIATION, INC., ENVISION REALTY GROUP, LLC, AND JACKSON POTTER, Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-12648-G**

## MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Stoddart

Albert Lutterodt appeals from an adverse judgment rendered in favor of Emily Lane Owners Association, Inc. (HOA), Envision Realty Group, LLC (Envision Realty), and Jackson Potter. In five issues, Lutterodt argues the trial court erred by denying his motion for judgment notwithstanding the verdict (JNOV) and motion for new trial, giving the jury an erroneous instruction, entering judgment against him for defamation, and allowing his attorney to withdraw before trial. We affirm the trial court's judgment.

FACTUAL BACKGROUND

Potter owns Envision Realty, which provided property management services to the HOA. Through an entity, Lutterodt owns several properties at Emily Lane, and was on the board of

directors for the HOA from 2009 through 2011. In 2010, Lutterodt served as treasurer of the board; he served as president in 2011.

The dispute among the parties centers around Lutterodt's multiple requests for the HOA's financial records. Lutterodt sought financial documents from Potter, Envision Realty, and the HOA because he was concerned about how money was being spent. He testified he requested documents so that he could "conduct an audit . . . because I couldn't verify where the money was going given the conditions of the community." It is undisputed that the HOA is required to "keep and maintain full and accurate books and records showing all of the receipts, expenses or disbursements" and to permit Owners to examine the records at "any reasonable time."

Lutterodt began requesting financial records in 2008. Once he joined the Emily Lane board in 2009, he began receiving some documents because he was a board member. However, he sought additional information. He directed his oral and written requests for additional documents to the board and Potter.

At trial, Potter and Robert George, a board member, testified that they provided records to Lutterodt. They explained that Lutterodt sought additional documents but frequently did not specify which records he wanted. Lutterodt also requested records he already had been given. Lutterodt maintained he needed additional documents because the records he received were incomplete and inadequate for him to conduct an audit. At trial, Lutterodt testified he still had not received all of the documents he needed. Potter considered Lutterodt's repeated requests to be harassing and believed Lutterodt was acting unreasonably even though Potter thought he "went above and beyond to try to satisfy Mr. Lutterodt."

The relationship between the parties rapidly deteriorated after Lutterodt lost an election in January 2012 to remain on the board of directors. Lutterodt believed the election was "rigged" by Potter and George, and Lutterodt refused to acknowledge he was no longer on the board.

Lutterodt filed the instant suit. The case was tried to a jury, which found in favor of appellees. Following the trial, the court entered judgment in favor of Potter, Envision Realty, and the HOA.[1] Lutterodt filed a motion for JNOV and a motion for new trial. The trial court denied both motions, and this appeal followed.

LAW & ANALYSIS

## A.  Jury Question One

Lutterodt makes two arguments with respect to jury question one. In his first issue, he argues the trial court erred by denying his motions for JNOV and for new trial because there is no evidence or insufficient evidence to support the jury's answer to question one. In his third issue, he asserts the trial court improperly instructed the jury regarding jury question one that Lutterodt must "reasonably identify records" when the controlling statute does not contain a requirement of reasonableness.

To preserve a jury charge complaint on appeal, the complaining party must make an objection before the trial court. *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) (citing rule of civil procedure 274 and rule of appellate procedure 33.1). Here, Lutterodt's counsel did not object to the charge at trial. Because Lutterodt did not make his complaint before the trial court, we conclude he has not preserved his third issue for appeal. *See id.*

---

[1] The trial court executed two documents on July 21, 2014, reflecting the judgment of the court. Because the law does not require a final judgment be in a particular form, whether a judicial decree is a final judgment is determined from its language and the record in the case. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 196 (Tex. 2001). "In some circumstances, 'a final judgment may consist of several orders that cumulatively dispose of all parties and issues.'" *Onyung v. Onyung*, No. 01–10–00519–CV, 2013 WL 3875548, at *9-10 (Tex. App.—Houston [1st Dist.] July 25, 2013, pet. denied) (mem. op.) (quoting *Noorian v. McCandless*, 37 S.W.3d 170, 173 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). When read together and in conjunction with the record, it is clear the two documents dated July 21, 2014, form the trial court's final judgment and dispose of all issues and parties in the case. *See Hickman-Bey v. Tex. Dept. of Crim. Just.*, No. 07-12-00490-CV, 2014 WL 1464154, at *2 (Tex. App.—Amarillo Apr. 11, 2014, no pet.). The trial court subsequently issued a corrected final judgment on September 15, 2014. In this case, the trial court retained jurisdiction to issue a corrected final judgment because its plenary power was extended by Lutterodt's motion for new trial filed on August 19, 2014. *See* TEX. R. CIV. P. 329b.

In his first issue, Lutterodt asserts the trial court erred by denying his motions for JNOV and for new trial because "there is either no evidence or insufficient evidence" to support the jury's answer to question one.

We review a trial court's decision to grant or deny a motion for JNOV under the legal sufficiency standard of review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (test for legal sufficiency is same for directed verdict, JNOV, and appellate no-evidence review). We credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *Oncor Elec. Delivery Co., LLC v. Southern Foods Group, LLC*, 444 S.W.3d 699, 703 (Tex. App.—Dallas 2014, no pet.). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner*, 289 S.W.3d at 830. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*

To preserve a factual sufficiency challenge, a party must present its complaint to the trial court in a motion for new trial. *See* TEX. R. CIV. P. 324 (b)(2). We review the denial of a motion for new trial for an abuse of discretion. *See Hodges v. Rajpal*, 459 S.W.3d 237, 250 (Tex. App.—Dallas 2015, no pet.). A trial court abuses its discretion when its actions are arbitrary or unreasonable or when it acts without reference to any guiding rules or principles. *Id.* Every reasonable presumption will be made on review in favor of the trial court's refusal of a new trial. *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex. App.—Dallas 2005, no pet.). When, as here, a party attacks the factual sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof, it must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We consider and weigh all the evidence and set aside

the verdict only if the supporting evidence is so weak or if the finding is so against the great weight and preponderance that it is clearly wrong and unjust. *Id.*

When conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.). The jury is free to believe some, all, or none of a witness's testimony. *Goggans v. Ford*, No. 05-14-01239-CV, 2015 WL 8523302, at *2 (Tex. App.—Dallas Dec. 9, 2015, pet. filed). We may not substitute our judgment for the fact finder's. *See Maritime Overseas Corp.*, 971 S.W.2d at 407.

We measure the sufficiency of the evidence against the jury charge as submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). Jury question one states:

> Did Mr. Lutterodt make a written demand, for a proper purpose, to inspect financial or other records required to be kept by the Association?
> You are instructed that a written demand by Mr. Lutterodt must reasonably identify records, which are required to be kept by the Association, for which Mr. Lutterodt demands an inspection, and the records demanded by Mr. Lutterodt must be relevant to Mr. Lutterodt's stated purpose.

The jury answered "no."

Lutterodt asserts he made multiple demands in writing for financial records so he could conduct an independent study or audit of the HOA's finances. The HOA concedes that Lutterodt made demands for records. However, it argues, the demands did not reasonably identify the records that were required to be kept and they were not made for a proper purpose.

After reviewing the record, we conclude that an October 19, 2010 email from Lutterodt to Potter and members of the board is the first written demand for financial records identifying specific records Lutterodt sought. In that email Lutterodt requested several documents for the time period of January 1–8, 2010, including cash flow statements, bank statements, income statements, service agreements, and all checks made to vendors and contractors. The email

stated he desired to obtain the documents in connection with his role as treasurer of the HOA. If we assume for purposes of this analysis that the October 19 email is a written demand for financial or other records that are required to be kept by the HOA and the written demand reasonably identifies the records he seeks, we nonetheless conclude Lutterodt has not demonstrated that the evidence is legally or factually insufficient to show he had an improper purpose.

On August 20, 2010, two months before making the October 19 request, Lutterodt emailed members of the board and informed them that they had failed to exercise sufficient financial control and management over the HOA. He stated he was calling for an "INDEPENDENT CPA to look into our finances." He closed the email by stating:

> LET US REMEMBER:
> Late president Nixon was a liar and a crook
> Ex-president Clinton was a liar. A certified Liar.
> Ex-Texas attorney general, Tony Gonzalez [sic] was a liar and a crook.
> Robert George, "You know who you are."

George testified that he encouraged Lutterodt to run for a board position, and Lutterodt joined the board in January 2009. However, George explained that while Lutterodt was on the board, he was "very disruptive at [board] meetings, making it difficult to get things done, incredibly emotional outbursts and rants." "We couldn't focus on the issue that we had to deal with." Instead, Lutterodt raised "superfluous issues month after month after month. The board would make a decision on it and he would come right back the next month bringing the same issues up again for reconsideration. We had many difficulties." Even after George gave Lutterodt all the association-related documents he had in 2010, and Lutterodt thanked him for the documents, Lutterodt "proceeded in the succeeding months and times to ask me for the same information" again. When George asked Lutterodt what else Lutterodt wanted, Lutterodt could not answer the question.

Potter testified he initially had a "pretty good relationship" with Lutterodt. But their relationship changed in 2009 when Lutterodt joined the HOA board. Potter explained: "So all of this started in 2009. The requests were real [sic] frequently. Obviously it kept increasing as the months and days would pass, but obviously from 2009 it was more than monthly." Once he became a member of the board, Lutterodt "was providing [sic] the monthly financial reports. And then obviously at that time he would always want more and more." Potter explained that regardless of what documents he provided, Lutterodt always wanted more. When Lutterodt was asked which specific documents he wanted, he would not answer.

George and Potter both testified that the board's problems with Lutterodt arose after Lutterodt joined the board in 2009. Although there is evidence in the record that the relationship between Lutterodt and the board and Potter became increasingly acrimonious in 2012 and 2013 after Lutterodt lost the election to remain on the board, there also is evidence from which the jury could have concluded that Lutterodt had an improper purpose for requesting documents as early as 2009. George and Potter both testified that they had amicable relationships with Lutterodt before he became a board member, but that once he joined the board, he became "very difficult" to work with, would have "incredibly emotional outbursts and rants," and would bring up "superfluous issues," thus interfering with the board's ability to do its work. The evidence shows Lutterodt made redundant document request as early as 2010 and, although Lutterodt complained he did not receive the documentation needed, he would not articulate which additional documents he wanted. Lutterodt's email inferring that George is a liar and a crook is consistent with George's testimony that Lutterodt had emotional outbursts and rants, and shows Lutterodt began personally attacking George's character before ever making a proper written document request.

After considering all of the evidence of Lutterodt's actions taken before he sent the October 19 email, we conclude there is more than a scintilla of evidence from which a jury could have found Lutterodt had an improper purpose when making any requests for records in the months and years before the October 19, 2010 email. *See Oncor Elec. Delivery Co.*, 444 S.W.3d at 703. Further, the jury's finding is not so contrary to the evidence as to be clearly wrong and unjust. *See id.* Therefore, viewing the evidence under the appropriate standards for legal and factual sufficiency, we conclude the trial court did not abuse its discretion by denying Lutterodt's motions for JNOV and for new trial. We overrule Lutterodt's first issue.

## B. Jury Question Two

In his second issue, Lutterodt argues the trial court erred by overruling his motion for JNOV because he is entitled to judgment in his favor on jury question two. The jury charge states:

> If you answered "Yes" to Question No. 1, answer then [the] following Question; otherwise do not answer the following Question.
>
> **QUESTION NO. 2**
> Did the Association fail to keep financial or other records, required to be kept by the Association, reasonably available at the Association's registered office or its principal office in this state for examination by Mr. Lutterodt after Mr. Lutterodt's written demand, if any?

Lutterodt asserts that because the jury incorrectly answered "no" to jury question one, it did not answer question two even though he was entitled to judgment in his favor on question two.

Following the instructions in the charge, the jury correctly did not answer question two after it answered "no" to question one. To the extent Lutterodt now argues this instruction is erroneous, Lutterodt has not preserved that complaint for appeal. *See Thota*, 366 S.W.3d at 689. We overrule Lutterodt's second issue.

## C.    Defamation

In his fourth issue, Lutterodt asserts the trial court erred by entering judgment against him for defamation because the evidence establishes that his statements were opinion, true or substantially true, protected by the First Amendment, or were not published.  The jury charge listed nine statements made by Lutterodt about Potter and asked the jury to determine whether any of them was defamatory.  The jury answered "yes."  In his brief, Lutterodt's argument does not challenge the defamatory nature of any of the statements in the jury charge, and does not identify any of the statements as being an invalid basis for recovery.  Rather, without citation to any authority, he argues other statements that he made were not defamatory.

Our briefing rules require an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  *See* TEX. R. APP. P. 38.1(i).  Lutterodt's fourth issue does not contain any citations to the record nor any citations to authorities.  An issue on appeal unsupported by citation to any legal authority presents nothing for the court to review.  *See Strange v. Continental Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied).  This Court does not have a duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred.  *See id.*  Because Lutterodt's fourth issue does not comply with our briefing rules, we conclude it presents nothing for our review.

## D.    Attorney Withdrawal

In his fifth issue, Lutterodt asserts the trial court erred by allowing his counsel to withdraw from his representation before the trial without showing good cause.  Our briefing rules require an appellant to state facts pertinent to the issues presented on appeal and include an argument with appropriate citations to the record.  *See* TEX. R. APP. P. 38.1(g), (i).  An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court

–9–

to review. *See Strange*, 126 S.W.3d at 678. Lutterodt's fifth issue does not include any citations to the record. Although Lutterodt asserts he was unable to quickly obtain new counsel and he announced "not ready" in his "his pretrial order," his brief does not include any record citations to support these statements. We conclude the issue has been inadequately briefed for our review.

Additionally, the record does not support Lutterodt's contentions. The record shows Lutterodt signed the trial court's order granting the motion to withdraw under the word "Agreed." The trial court's judgment reflects the parties, including Lutterodt who was represented by two new lawyers, announced "ready" for trial; Lutterodt does not argue this statement in the judgment is incorrect.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
_____
CRAIG STODDART
JUSTICE

141329F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ALBERT LUTTERODT, Appellant

No. 05-14-01329-CV    V.

EMILY LANE OWNERS ASSOCIATION, INC., ENVISION REALTY GROUP, LLC, JACKSON POTTER, Appellees

On Appeal from the 134th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-12648-G.
Opinion delivered by Justice Stoddart.
Justices Myers and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Emily Lane Owners Association, Inc., Envision Realty Group, LLC, and Jackson Potter recover their costs of this appeal from appellant Albert Lutterodt.

Judgment entered this 16th day of June, 2016.