**EL DORADO MOTORS, INC., Appellant,**

v.

**Graham R.E. KOCH and Vial, Hamilton, Koch & Knox, L.L.P., Appellees.**

No. 05-04-00540-CV.

Court of Appeals of Texas, Dallas.

July 27, 2005.

362

William Thompson, Robert H. Holmes, The Holmes Law Firm, Dallas, for Appellant.

Jeffrey S. Levinger, James E. Coleman, Jr., Tim Gavin, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Richard L. Smith, Quilling, Selander, Cummiskey & Lownds, P.C., Dallas, for Appellees.

Before Justices MORRIS, LANG, and MAZZANT.

## OPINION

Opinion by Justice LANG.

El Dorado Motors, Inc. appeals a final summary judgment that it take nothing from appellees Graham R.E. Koch and Vial, Hamilton, Koch & Knox, L.L.P. Appellees sought summary judgment on traditional and no-evidence grounds on claims

asserted by El Dorado. In its final summary judgment the trial court stated specifically the claims on which summary judgment was granted or denied and that summary judgment on "Plaintiff's claim for actual damages in the nature of lost profits is granted." In another, subsequent paragraph of the order, the trial court stated, "Plaintiff shall take nothing against Defendants."

El Dorado brings three issues on appeal. In issue one, El Dorado contends the trial court erred in granting summary judgment on its claim for "actual damages in the nature of lost profits" and then entering a take nothing judgment against it. In issue two, El Dorado contends the trial court abused its discretion in denying El Dorado's motion for new trial. Then, in issue three, El Dorado contends the trial court abused its discretion in denying its motion for continuance and motion for leave to file supplemental evidence. For the reasons below, we resolve El Dorado's issues against it and affirm the trial court's final summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

El Dorado's allegations in this suit are founded upon the actions of Richard Hayden, the accountant for El Dorado. When Al Graff died, his stock in El Dorado passed to his son, Stan Graff. Hayden was also the executor of Al Graff's estate. From January to October 2000, Hayden was El Dorado's president and sole director.

This case began in the 68th Judicial District Court of Dallas County, where El Dorado sued appellees, Hayden, and Harold "Steve" Stevens. El Dorado complained about Hayden's acts, while director and president, when he terminated Stan Graff as El Dorado's president and sole director and executed an employment agreement with Stevens as El Dorado's general manager (the Stevens lawsuit). All claims against appellees, Koch and Vial, Hamilton, were severed from the Stevens lawsuit, assigned a new cause number, and then transferred to the 14th Judicial District Court. The Stevens lawsuit was tried to a jury in the 68th Judicial District Court. El Dorado did not recover any damages for lost profits in that case, but the court awarded El Dorado $350,000 in attorney's fees.

In its amended original petition filed in this suit, El Dorado asserted claims for breach of fiduciary duty and legal malpractice and, in the alternative, negligent misrepresentation and civil conspiracy. El Dorado alleged that appellees' acts "were the proximate cause of substantial damages to El Dorado, including lost profits." El Dorado also claimed exemplary damages.

At the beginning of the hearing on appellees' summary judgment motion, the trial court stated that the court had previously determined it would "freeze" the summary judgment record. El Dorado argued several previously-filed motions to supplement the record and argued for a continuance to obtain additional summary judgment evidence. The trial court orally denied the motion to supplement at the conclusion of the hearing. The trial court subsequently signed the final summary judgment.

The trial court heard El Dorado's motion for new trial and denied it by a written order. This appeal timely followed.

## II. MOTION FOR SUMMARY JUDGMENT

In its first issue, El Dorado argues the trial court erroneously granted summary judgment as to the claim for actual damages and improperly entered a take noth-

ing judgment against it because: (1) appellees did not expressly move for summary judgment as to "actual damages in the nature of lost profits"; (2) the motion for summary judgment did not address all damages claimed, and thus El Dorado's claims for out-of-pocket damages survived summary judgment; (3) there is evidence in the record raising a fact issue on lost profits and actual out-of-pocket damages, including $350,000 in attorney's fees awarded in the *Stevens* lawsuit, specifically, an 8½ in. by 11 in. spreadsheet, the deposition testimony of an expert witness, Thomas Turner, an accountant who created the spreadsheet, and the judgment in the *Stevens* case; and (4) summary judgment cannot be supported on grounds of res judicata and collateral estoppel as a matter of law.

## A. Standard of Review

To succeed in a motion for summary judgment under rule of civil procedure 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant and resolve any doubt in the nonmovant's favor. *Id.* Under rule of civil procedure 166a(i), a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). Unless the respondent produces summary judgment evidence raising a genuine issue of material fact, the court must grant the no-evidence motion. *Id.;* *W. Invs., Inc.,* 162 S.W.3d at 550. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary

judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *W. Invs., Inc.,* 162 S.W.3d at 550; *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

A motion for summary judgment must itself expressly present the grounds upon which it is made and must stand or fall on those grounds alone. *Batte v. Hendricks,* 137 S.W.3d 790, 791 (Tex.App.-Dallas 2004, pet. denied); *see* Tex.R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."). A summary judgment cannot be affirmed on grounds not expressly set out in the motion or response. *Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993). A no-evidence summary judgment motion "must state the elements as to which there is no evidence." Tex.R. Civ. P. 166a(i).

## B. Discussion

■ In its motion for summary judgment, appellees cited the traditional and no-evidence summary judgment rules and moved the court "to enter summary judgment in their favor on all claims, all issues[,] and all theories of damages asserted" by El Dorado. Appellees asserted that "the essential elements of every claim asserted by El Dorado-causation and damages-are missing." Appellees also asserted,

> [T]he sum and substance of El Dorado's theories is [sic] nothing more than an effort to hold Hayden's attorneys liable for any damages caused by Hayden's decisions. Each theory advanced by El Dorado boils down to an assertion that Texas law required [appellees] to stop Hayden from terminating Stan Graff and entering into the contract with Stevens, and that [appellees] are liable in

damages for failing to prevent Hayden from doing what he did.

Appellees asserted two specific grounds regarding damages:

There is no evidence of the following essential element of El Dorado's claims on which El Dorado would have the burden of proof at trial: that Hayden caused any damages for which he would be legally responsible to El Dorado; [and]

Under principles of res judicata and collateral estoppel, the judgment in [the *Stevens* lawsuit] precludes El Dorado from asserting in this case that it sustained any damages caused by Hayden terminating Stan Graff and entering into the contract with Stevens.

We conclude that the motion complies with rule of civil procedure 166a(i) by stating the element of the claims asserted—damages—on which there was no evidence. *See* TEX.R. CIV. P. 166a(i). El Dorado cites no authority that "damages" does not include all specific types of damages, including lost profits and out-of-pocket damages. El Dorado does not argue on appeal that the trial court improperly overruled its objection to a lack of specificity of the motion. Accordingly, we reject El Dorado's argument that appellees did not expressly move for summary judgment as to El Dorado's claim for "actual damages in the nature of lost profits."

■ The final summary judgment specifically recites that summary judgment is granted as to lost profits. However, the judgment also states, "Plaintiff shall take nothing against Defendants." The record of the summary judgment hearing reflects that the trial court had the impression that the sole claim for damages was lost profits. That understanding was not addressed by El Dorado's counsel. Specifically, the trial court asked El Dorado's counsel, "Is the nature of damages sought by plaintiff lost profits?" Counsel replied in the affirmative. Subsequently, the trial court stated, "With respect to the portion of the [summary judgment] motion going to damages and with the Court's understanding the only damages sought are for lost profits, the Court grants the motion."

Additionally, in the motion for new trial, El Dorado did not identify what specific types of damages were claimed. El Dorado simply claimed there were damages proved by Turner and another witness whose testimony is not relevant here. The record of the hearing on the motion for new trial reflects that El Dorado argued there were other damages, including $350,000 in attorney's fees, as evidenced by the final judgment in the *Stevens* lawsuit which was in the record, even though counsel had not previously called the trial court's attention to those damages.

The final summary judgment in this case clearly identifies each cause of action. Summary judgment was granted to some claims (negligent misrepresentation and exemplary damages), but not to others (breach of fiduciary duty, malpractice, and conspiracy). Yet, since the motion asked for relief as to all damages, the "take nothing" final summary judgment disposes of all damage claims. We conclude that, regardless of whether the trial court misunderstood El Dorado's claims, the language of the final summary judgment, while expressly granting summary judgment as to lost profits, also granted summary judgment as to all other claims addressed in the motion for summary judgment, but not specifically identified in the final summary judgment. Accordingly, we reject El Dorado's argument that the final summary judgment did not grant summary judgment on out-of-pocket damages.

Next, El Dorado argues that, even if appellees had moved for and obtained

summary judgment on "actual damages in the nature of lost profits" and "actual, out-of-pocket damages," there is evidence in the summary judgment record raising a fact issue as to actual damages in the amount of reasonable expenses and attorney's fees incurred in the *Stevens* case, as shown by the judgment in that case, and lost profits and other out-of-pocket expenses identified by Turner, El Dorado's expert witness, in his deposition and the spreadsheet. Accordingly, we review this evidence to determine whether it supports El Dorado's claim for damages.

█ El Dorado contends that the evidence of the award for $350,000 in attorney's fees in the *Stevens* case is sufficient to raise a fact issue as to damages. We disagree. That sum was based on a stipulation, approved by the trial court as reasonable and necessary attorney's fees for prosecuting the separate claim against Stevens. This Court has long held that attorney's fees incurred in another action are not evidence of damages in an action of the type now before us. *See Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 549 (Tex.App.-Dallas 1991, no writ) ("In Texas, attorneys' fees expended in prior litigation with third parties are not recoverable as damages: attorneys' fees are only recoverable when provided for by contract or by agreement between the parties."). Accordingly, the judgment in the *Stevens* lawsuit does not raise a fact issue as to damages in this lawsuit.

█ Next, we consider whether the spreadsheet and Turner's expert deposition testimony "constitute evidence of probative force." *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 256, 294 S.W.2d 377, 380 (1956). "[A]lthough expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone,

that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.1999)). "Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Id.* (quoting Tex.R. Evid. 401). Such evidence is "incompetent evidence" which will not support a judgment. *Id.* (citing *Cas. Underwriters v. Rhone*, 134 Tex. 50, 53–54, 132 S.W.2d 97, 99 (1939) ("bare conclusions" are incompetent and do not "amount to any evidence at all")).

█ Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). However, the injured party must do more than show that it suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact intensive determination. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id.*

█ If the business for which lost profits are sought is shown to be an ongoing business, then evidence that the business was established and making a profit at the time when the tort was committed is admissible to show lost profits. *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex. App.-Dallas 1988) (citing *White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983)), *writ denied*, 778 S.W.2d 865 (Tex.1989) (per curiam). Proof of an operation of a business at a loss, without more, fails to

meet the test of showing lost profits with reasonable certainty. *Id.* (citing *First Tex. Sav. Ass'n v. Dicker Ctr., Inc.,* 631 S.W.2d 179, 187 (Tex.App.-Tyler 1982, no writ)).

■ Out-of-pocket damages measure the difference between the value the buyer has paid and the value of what he has received. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex. 1997); *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984).

The spreadsheet lists eight categories that El Dorado argues are out-of-pocket expenses: (i) two that relate to the *Stevens* lawsuit (legal and expert witness fees and employee time), and (ii) six that relate to dealership expenses.[1] In addition, the spreadsheet lists two categories El Dorado argues relate to lost profits: lost momentum and enhanced productivity. The spreadsheet shows, for each category: (i) a date in 2000 or 2001; (ii) "minimum" and "maximum" amounts; and (iii) "minimum" and "maximum" "estimated amounts" after applying a "return of investment" factor. The total amount of the loss estimated was over $9 million.

Referring specifically to the spreadsheet, Turner testified to dealership expenses incurred due to decisions made by Hayden. Further, Turner testified, "Also, in the damage model numbers, when we get into the operational side of the dealership, there was momentum that was being gained during the tenure that Mr. Graff had involvement in moving the dealership into profitability. And that trend was broken when he was fired [by Hayden]." Turner was asked to explain "momentum broken." He replied, "[W]hat we looked at was the profitability that was-the trend that was occurring in '98 and '99." Accord-

ing to Turner, had the dealership, which was "profitable in '98 and '99," "stayed on that path at the rate we were improving, that we would have made more money." Turner also testified that the amount of loss was based on "internal issues" and "sales trends." Then, Turner was asked, "So it's your testimony that despite the fact that Mr. Hayden was the president, all of these damages were caused by Mr. Stevens. ...." Turner replied, "Well, I guess looking back at that and thinking about it, I mean, Mr. Hayden was in charge.... And he had that decision of whether to either keep Mr. Stevens or let Mr. Stevens go." Turner was then asked, "The buck stops at the president of the company, correct?" Turner replied, "Yes."

Tuner's deposition refers to "profitability" and "sales trends," but fails to establish how any loss of profitability was calculated. The spreadsheet does not show that the business was established and making a profit at the time of Hayden's actions. *See Turner,* 765 S.W.2d at 465. Thus, neither the spreadsheet nor Turner's deposition gives the basis for Turner's opinions and conclusion as to lost profits damages, that is, "objective facts, figures, or data from which the amount of lost profits can be ascertained." *See Holt Atherton Indus., Inc.,* 835 S.W.2d at 84. Moreover, Turner explained the dealership expenses in terms of "excessive" expenses. However, because Turner makes no comparison to any lower amount that should have been paid and the "minimum" and "maximum" amounts for these categories are the same, the bare amount of expenses is no evidence of out-of-pocket damages. *See Arthur Andersen & Co.,* 945 S.W.2d at 817. We conclude the spreadsheet and the

---

1. The six categories are: excessive tax return fees paid to Hayden; franchise tax penalty paid September 21, 2000; higher insurance costs due to losing GMAC floor plan; unnec- essary rent paid to outside third party; bonus and insurance payments to Stevens; used vehicle gross profit; and accounting fees to "clean up books."

deposition testimony do not "amount to any evidence at all" as to "actual damages in the nature of lost profits" or "actual, out-of-pocket damages" because there is no evidence as to the basis of Turner's opinions and conclusions. *See Cas. Underwriters*, 134 Tex. at 54, 132 S.W.2d at 99. Accordingly, we cannot agree with El Dorado's argument that there is summary judgment evidence raising a fact issue as to these damages.

We conclude that appellees moved for, and the trial court properly granted, summary judgment on grounds that there is no evidence of damages, and the trial court properly rendered a take nothing judgment. Therefore, we need not address El Dorado's arguments as to res judicata and collateral estoppel. El Dorado's first issue is decided against it.

### III. MOTION FOR NEW TRIAL

In its second issue, El Dorado contends the trial court abused its discretion in denying El Dorado's motion for new trial.

#### A. Standard of Review

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715, 721 (Tex.2003); *Henry v. Halliburton Energy Servs., Inc.*, 100 S.W.3d 505, 510 (Tex.App.-Dallas 2003, pet. denied). Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). Every reasonable presumption will be made on review in favor of the trial court's refusal of a new trial. *Jackson*, 660 S.W.2d at 809–10. Review of a trial court's action under the

abuse of discretion standard is a question of law. *See id.* at 810.

#### B. Discussion

El Dorado argues that the trial court's granting summary judgment "as to damages in the nature of lost profits" and entering a take nothing judgment resulted in part from the trial court's "erroneous understanding that the only damages sought are for lost profits." El Dorado argues that granting summary judgment "when the summary judgment record clearly reflects evidence of actual damages is an abuse of discretion."

El Dorado's arguments on this point address the merits of the granting of the motion for summary judgment as to damages. We have already resolved the summary judgment issue against El Dorado. Consequently, we conclude El Dorado does not show an abuse of discretion in denying its motion for new trial. *See Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex.2002) (concluding no abuse of discretion in denying motion for new trial when movant offered only "bare assertions" without explanation of good cause standard); *see County of Dallas v. Wiland*, 124 S.W.3d 390, 401 (Tex.App.-Dallas 2003, pet. granted) ("Because we have concluded there was no error in the trial court's judgment on all issues concerning liability, we conclude the trial court did not abuse its discretion in denying the County's motion for new trial."). El Dorado's second issue is resolved against it.

### IV. MOTION FOR CONTINUANCE AND MOTION FOR LEAVE TO SUPPLEMENT

In its third issue, El Dorado contends the trial court abused its discretion in denying El Dorado's motion for continuance of the summary judgment hearing to amend summary judgment proof and the

December 3, 2003 motion for leave to supplement the summary judgment evidence. On appeal, El Dorado argues that it was prevented from presenting evidence as to actual damages that included deposition testimony of damages expert Gregg Huddleston, additional deposition testimony of Turner, and an affidavit of Hayden.

### A. Motion for Continuance

 A denial of a motion for continuance is subject to review for abuse of discretion. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex.2002). When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex.1996) (citing TEX.R. CIV. P. 166a(g), 251, 252).

 El Dorado did not file an affidavit or a verified motion for continuance. Consequently, the record shows El Dorado's motion for continuance failed to comply with the rules of civil procedure.

 Moreover, the record shows that El Dorado indicated at the beginning of the hearing that it would file a motion for continuance to amend its summary judgment evidence depending on the court's ruling on the motion to supplement. However, after some argument, the trial court stated that "if either side needs to make any motion, make it, because we need to proceed." El Dorado stated, "[L]et's proceed." After hearing argument, the trial court orally sustained appellees' objections to "conclusory statements." El Dorado then stated, "Okay. Then I need to file a motion for continuance to allow El Dorado to correct the record as to damages. Ask the Court to consider it." At that point, the motion was file stamped. To present a complaint for appellate review, the record

must show a complaint was communicated to the trial court by a timely motion, request, or objection complying with the requirements of the rules of civil procedure. TEX.R.APP. P. 33.1(a). We cannot conclude that El Dorado's motion for continuance, filed at the end of the hearing, was timely. On this record, we conclude El Dorado has failed to show an abuse of discretion in denying its motion for continuance.

### B. Motion to Supplement

 The denial of a motion for leave to file a late summary judgment response is likewise reviewed for abuse of discretion. *Carpenter,* 98 S.W.3d at 685–86; *Crooks v. Moses,* 138 S.W.3d 629, 634 (Tex.App.-Dallas 2004, no pet.). A motion for leave to file a late summary judgment response should be granted when the nonmovant establishes good cause by showing that the failure to timely respond (1) was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) that allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment. *Carpenter,* 98 S.W.3d at 688.

 The judge of the 68th Judicial District Court heard the motion for summary judgment, orally granted appellees' motion for summary judgment, but did not sign a written order. El Dorado then moved to recuse the judge. The case was transferred to 14th Judicial District Court, where a status conference was held. Approximately six weeks before the hearing on the motion for summary judgment, El Dorado filed a motion for leave to file supplemental evidence in response to the summary judgment motion, requesting leave to file the above-mentioned damages evidence. In the motion, El Dorado stated that it "mistakenly failed to attach" the Turner and Huddleston evidence to its re-

sponse and that "its failure to attach such evidence was not intentional or the result of conscious indifference." These statements are conclusory and do not give the facts as to "accident or mistake." *See Holt Atherton Indus., Inc.*, 835 S.W.2d at 82 ("conclusory allegations are insufficient").

At the hearing, El Dorado argued that the Huddleston and Turner evidence was "substantive" and "foundation evidence" for its damages. As to the Hayden affidavit, El Dorado argued that Hayden refused to give an affidavit until Hayden secured a new lawyer to replace the lawyer he earlier dismissed. Appellees countered that appellees had deposed Hayden "on all the issues" and the testimony in the affidavit was not new, but was available at the time Hayden was deposed. We conclude that the record does not show "accident or mistake" for the failure to timely respond as to this evidence. *See Carpenter*, 98 S.W.3d at 688. Accordingly, because the record does not show El Dorado established good cause for continuance or leave to file additional evidence, we conclude El Dorado has failed to show an abuse of discretion in the denial of these motions. We resolve El Dorado's third issue against it.

## V. CONCLUSION

Having resolved El Dorado's three issues against it, we affirm the trial court's final summary judgment.