**Shannon L. HINKLE, Appellant**

v.

**Craig S. HINKLE, Appellee.**

**No. 05–06–00146–CV.**

Court of Appeals of Texas, Dallas.

May 29, 2007.

Paul Craig Laird II, Ashley & Laird, L. C., Irving, for Appellant.

Allan M. Stafford, Garland, for Appellee.

Before Justices WRIGHT, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

Following a jury trial, appellant Shannon L. Hinkle appeals from a reformed final decree of divorce appointing appellee Craig S. Hinkle as joint managing conservator of the parties' only child, a minor. In three issues, appellant asserts the trial court's appointment of appellee as joint managing conservator was improper under § 153.004 of the Texas Family Code because no reasonable juror "could have disregarded the uncontroverted evidence of family violence for a finding of no family violence." For the reasons below, we resolve appellant's issues against her and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and appellee were married on January 4, 1997, and separated on October 31, 2003. The events of the separation are acrimonious and are one of the bases of appellant's allegations of family violence. Appellant testified appellee "pulled a gun" and pointed it at her during a physical altercation on October 31, 2003, at the parties' residence. Although appellee testified his memory of that incident is "hazy," he stated he acted only defensively and did not "pull a gun" or aim a gun at appellant. Immediately following the alleged assault, appellant left the parties' infant child in the care of appellee at the parties' residence while she went to "confront" appellee's alleged girlfriend, who lived five to ten minutes from the residence. Appellant returned, alone, to the parties' residence approximately thirty minutes later. Appellant left the residence later that evening with the parties' child and stayed with family. Neither party contacted police regarding the incident.

Appellant filed for divorce on December 8, 2003.[1] On December 13, 2003, appellant and appellee entered into a visitation agreement under which appellee's visitation with their child was to be supervised by family members of appellee.

Appellee filed an answer on December 15, 2003. In his answer, appellee denied he "has a pattern of child neglect or family violence within two years preceding the filing of this case or during the pendency of this case." In addition, appellee alleged in part that "[appellant] has committed family violence toward [appellee] causing injury to [appellee's] person within two years preceding the filing of this cause or during the pendency of this cause."

On June 23, 2004, appellee filed a "first amended counterclaim and request for a hearing for temporary orders." In addition to restating the claims in his answer, appellee alleged in relevant part that "[appellant] should be required to complete anger management counseling." Further, appellee contended the maternal grandfather of the parties' child had "repeatedly displayed anger in the presence of the child" and should be denied access to the child until completing anger management counseling.

An amended petition for divorce was filed by appellant on July 13, 2004. Appellant argued in relevant part that "[appellee] has a history or pattern of committing family violence during the two-year period preceding the date of filing of this suit." Further, the amended petition included "causes of action for assault" based on the October 31, 2003 incident.

Following a July 19, 2004 hearing, the trial judge signed "temporary orders" on April 19, 2005, appointing appellant temporary managing conservator of the parties' child and appointing appellee temporary possessory conservator. A jury trial was held July 25 through 27, 2005. Both parties testified with respect to the October 31, 2003 incident. The jury was charged in relevant part:

A parent may not be allowed access to a child if the parent has a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit unless awarding access to the child would not endanger the child's physical health or emotional welfare and would be in the child's best interest.

"Family violence" means an act by a member of a family against another

1. Appellant's December 8, 2003 petition is not part of the record on appeal.

member of the family that is intended to result in physical harm.

The first question submitted to the jury was, "Has there been a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit?" The jury answered, "No."

In the final decree of divorce signed by the trial judge on November 22, 2005, the parties were appointed joint managing conservators. The decree stated, in part, "It has been represented to the court that there has been no pattern of child neglect or family violence by any party to this case within two years preceding the filing of this case or during the pendency of this case."

On December 21, 2005, appellant filed a "motion for new trial and motion for modification of judgment." Appellant contended, "This case specifically has a showing of violence and pulling two guns by the [appellee] and trying to murder the [appellant] and child." Therefore, appellant argued "the jury verdict has no reasonable evidence or basis." In addition, appellant asserted the judgment did not meet the statement in the ruling set out by the court and should, therefore, be amended to comply with the court's ruling.

Appellee filed a response to appellant's motion on January 13, 2006. Appellee contended in relevant part:

Section 153.004 requires a "history or pattern" of a list of specific events. [Appellant] alleges matters unsupported by testimony and unsupported by a trial transcript. The jury had an opportunity to hear and see everything the [appellant] thought supported her allegations, but the jury found no history or pattern of family violence. [Appellant] failed to prove a history or pattern of family violence.

After a January 17, 2006 hearing on appellant's motion, a reformed final decree of divorce was signed by the trial judge on February 2, 2006.[2] The reformed final decree contained revisions respecting several rights and duties of the parties not relevant to this appeal. Further, the portion of the original decree respecting "family violence" was amended to read, "The jury found that there has been no pattern of child neglect or family violence by any party to this case within two years preceding the filing of this case or during the pendency of this case." On February 3, 2006, appellant filed this appeal.

## II. LEGAL AND FACTUAL SUFFICIENCY

In her first issue, appellant contends, "Under the legal sufficiency standard of review for no-evidence, the jury's ruling on the issue of family violence in the verdict should be disregarded and reversed and the Appellee should be removed as Joint Managing Conservator and Appellant be appointed Sole Managing Conservator pursuant to Texas Family Code § 153.004." In her second issue, appellant asserts, "Under the factual sufficiency standard of review of no-evidence the jury's finding of no family violence should be disregarded and reversed and the Appellee be removed as Joint Managing Conservator and Appellant should be appointed Sole Managing Conservator pursuant to Texas Family Code Section 153.004."

### A. Standard of Review

■ A "no evidence" or legal insufficiency point is a question of law that challenges the legal sufficiency of the evidence

2. The trial court entered an order denying appellant's motion for new trial and granting appellant's motion to reform the judgment on February 15, 2006.

to support a particular fact finding. *Lide v. Lide*, 116 S.W.3d 147, 151 (Tex.App.-El Paso 2003, no pet.). In determining whether the evidence is legally sufficient to support a fact-finder's determination, we must determine whether the evidence before the court would allow reasonable and fair-minded people to find the facts at issue. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). We consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Id.* at 807, 822. Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996).

■■ When reviewing the factual sufficiency of evidence, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). We set aside a fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* *See also Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied).

■■ In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Keller*, 168 S.W.3d at 819; *see also Burns v. Burns*, 116 S.W.3d 916, 920 (Tex.App.-Dallas 2003, no pet.). We may not substitute our judgment for the fact-finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998).

## B. Applicable Law

Section 153.004 of the Texas Family Code, titled "History of Domestic Violence," provides in relevant part:

(a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

(b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child.... It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

. . . .

(d) The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit, unless the court:

(1) finds that awarding the parent access to the child would not endanger the child's physical health or emotion-

al welfare and would be in the best interest of the child; and

(2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent. . . .

TEX. FAM.CODE ANN. § 153.004 (Vernon Supp.2006).

■ A rebuttable presumption exists that the appointment of joint managing conservators is in the best interests of a child. TEX. FAM.CODE ANN. § 153.131(b) (Vernon 2002). A finding of a history of family violence involving the parents of a child removes that presumption. *Id.* A party requesting to be appointed sole managing conservator of a child has the burden to rebut the statutory presumption that joint managing conservatorship would be in the best interest of the child. *Lide,* 116 S.W.3d at 152.

### C. Application of Law to Facts

Appellant argues "the facts of family violence by the Appellee and the Appellee's 'hazy' memory of the gun incident and assault cannot be disregarded by a reasonable finder of fact. The jury had to have disregarded the pattern and history of family violence by the Appellee to have found no family violence." Appellee asserts that "[t]he only allegation of physical abuse was alleged to have occurred on October 31, 2003," and the evidence supports the jury's finding that appellee did not physically abuse appellant on that date.

Appellant testified that on October 31, 2003, she learned from a friend that appellee was planning to spend the upcoming weekend with Emily Garrett, a co-worker of appellee with whom appellee had previously admitted an "emotional affair." As appellee arrived home from work on that date, appellant was "angry" and was in the process of throwing appellee's clothes into the garage. The parties' child was sleeping in an infant swing in the living room of the parties' residence. Appellant stated she told appellee, "Get out of my house. It's over," but appellee did not leave. Appellant testified she began throwing objects from the kitchen counter at appellee "to keep him from grabbing me."

Appellant testified appellee headed toward a closet where guns were kept. Appellant stated that "it was that pivotal moment where I know he's going to get guns and going to harm—and to kill himself in my house. And I couldn't do anything to help him. Or get [our child]. And I chose to follow him." Appellant testified appellee removed two handguns from a bag in the closet. Appellant stated, "He grabs both of them, and he turns around and he has one gun pointed at me and one gun at his head." Appellant testified she wrestled both guns away from appellee and "just bear-hugged him as hard as I could and locked my arms together." Appellant said that when she and appellee heard their infant child crying, "[W]e both got up. I'm like—at first I asked him if he was okay. He said, yeah." Appellant then left the residence to "confront" Emily Garrett, who lived "five or ten minutes" away. From her cell phone, appellant called Phil, a friend of the parties who worked nearby, and asked him to come to the parties' residence. Appellant did not call police.

Appellant stated she returned, alone, to the parties' residence approximately thirty minutes later and prepared to leave with the parties' child. She testified appellee grabbed her and shook her, and she tried to "push him off me." Appellant stated, "That's when Phil jumps up and starts— you know, breaks us up." Appellant left later that evening with the parties' child

and stayed at her mother's house. Appellant testified that during the following month, until the visitation agreement between the parties was executed, she left the parties' child alone with appellee while she was at work. Appellant stated she did not plead assault in her original divorce petition. She testified her assault claims against appellee were added approximately six months after her original petition was filed.

Appellee testified as follows on cross-examination respecting the October 31, 2003 incident:

Q. And you're saying you did not pull a gun on October 31st, 2003?

A. I didn't pull one and aim it at [appellant].

Q. Did you aim it at yourself?

A. No.

Q. Well, who did you pull the gun on?

A. I didn't pull it on anyone.

Q. But you just intimated that you didn't aim it—you said you didn't aim it at her.

A. Right.

Q. So you pulled it?

A. I don't honestly remember if it came out of the bag in the holster.

Q. So you were packing it up to leave?

A. Okay. Where are we in the story?

Q. Well, I don't know. You said it came out of the holster. How would it come out of the holster if you didn't bring it out?

A. That's the part of the story that gets hazy when it gets to that point. You're leaving out a whole lot of fighting and a whole lot of hitting.

Q. Well, why would a gun—who got the gun out? Where was the gun kept? Let me ask you that.

A. It was on the top shelf in the closet.

Q. And Mrs. Hinkle didn't get the gun out.

A. No, she did not.

Q. So if it came—you had to have gotten it down.

A. I got it down from the shelf, yes.

Q. And why would you take a gun down from the shelf if you're having a violent altercation with your wife?

A. At that point we were a good—you know, anytime you get caught in one of those situations where there's a lot of hitting and being hit, you lose track of time. I don't know how long it was, but it seemed like forever. And like I said, we have left out a whole lot of the story between—and a whole lot of time. At that point I had been caught, you know. You—it all hits you at once. You don't turn out—you didn't turn out to be the man that you wanted to be. And—

Q. So you're saying that you got the gun out for suicide purposes?

A. That's what was in my head, yes, sir. But like I said, it came down from the shelf. I don't remember if it actually came out or not. I know it wasn't aimed at anybody.

Further, appellee testified he acted only defensively on October 31, 2003. He stated, referring to appellant, "I may have—I may have grabbed her wrists, you know, stopping a punch or two. But no, I wasn't—I wasn't restraining her. I wasn't—I wasn't hitting."

Emily Garrett testified that when appellant visited her home on October 31, 2003, appellant was "screaming and hysterical." Garrett testified she saw "some red spots" on appellant's forearms, but did not see any cuts or bruises on appellant. Garrett said appellant told her appellee "was trying to hurt himself so she wrestled the gun away from him." Further, Garrett testi-

fied, appellant did not state appellee had harmed her or pulled a gun on her.

Christine Stanovich, a friend of the parties, testified appellant phoned her on the evening of October 31, 2003, and "was really upset." Ms. Stanovich testified appellant asked her and her husband, Robert, to come over because appellee "had pulled out a weapon, and she was really concerned about it." Appellant wanted Mr. Stanovich to inspect appellee's guns "to make sure they weren't loaded." Pursuant to appellant's request, Ms. Stanovich and Mr. Stanovich visited the parties' residence that evening. Ms. Stanovich testified she did not remember if appellant made any comment about a gun being pointed at her. Further, Ms. Stanovich testified appellant "said that she threw something at [appellee] and locked him out of the house." After she "consoled" appellant, Ms. Stanovich played a computer game at the parties' residence.

Mr. Stanovich testified appellant told him she was upset about the guns because appellee "was planning on returning to the house and killing himself with one of the guns." Mr. Stanovich stated that after determining the guns were not loaded, he left the guns where he had found them, in a bag in a bedroom of the parties' residence. Neither Mr. Stanovich nor Ms. Stanovich called police.

Paula Boyer, appellant's mother, testified she saw appellant at approximately 9:30 p.m. on October 31, 2003. Boyer said appellant told her she threw things at appellee earlier that evening because "[s]he was trying to keep him away from her." Boyer said appellant told her appellee loaded the guns and "pointed one of the pistols at her. That she wrestled him for them, and they struggled." Boyer testified appellant had bruises on her arms and back and "red marks or scratches" around her wrists. Boyer said she did not call the police.

■ Because appellant was the party seeking to be appointed sole managing conservator of the parties' child, the burden was on appellant to show evidence of family violence by appellee to overcome the presumption in favor of joint managing conservatorship created by § 153.131(b) of the Texas Family Code. *See Lide*, 116 S.W.3d at 152; Tex. Fam.Code Ann. § 153.131(b). The jury was instructed, "'Family violence' means an act by a member of a family against another member of the family that is intended to result in physical harm."[3]

Appellant asserts "there is uncontroverted evidence of the Appellee pulling a gun on the Appellant and the child and of Appellee also engaging in immoral/violent conduct and threats of violence prior to and after the time of pulling the gun on Appellant." However, the record contains no evidence of appellee "pulling a gun" on the parties' child, as alleged by appellant. Moreover, other than the October 31, 2003 incident, the record contains no evidence of alleged acts by appellee "intended to result in physical harm" to appellant.[4] Accord-

---

**3.** The Texas Family Code provides that "family violence" means "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." Tex. Fam.Code Ann. § 71.004(1) (Vernon 2002). *See also* Tex.

Fam.Code Ann. § 101.0125 (Vernon 2002) (definition in § 71.004 applicable to Title 5 of Texas Family Code, which contains § 153.004). However, any objection to the jury charge in this case has been waived by the parties. *See* Tex.R. Civ. P. 274.

**4.** With respect to allegations of physical abuse other than the October 31, 2003 incident, appellant testified as follows on direct examination:

ingly, our analysis focuses exclusively on the evidence respecting the events of October 31, 2003.

In support of her argument, appellant cites *Keller* for the proposition that "if the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it." *Keller*, 168 S.W.3d at 822. Appellant contends that, based on the evidence in the record, a reasonable jury "could only have found family violence." However, nothing in the record in this case undisputedly shows a history or pattern of family violence by appellee. *See Burns*, 116 S.W.3d at 921.

Appellee testified he did not point a gun at appellant and acted only defensively on October 31, 2003. Appellant left the parties' child alone with appellee immediately after the alleged assault while she went to "confront" Emily Garrett. During the following month, appellant continued to leave the child alone with appellee on the days she worked. Appellant did not call the police regarding the alleged assault and did not include assault claims in her original divorce petition. Christine Stanovich, whom appellant called soon after the alleged assault, did not remember whether appellant stated appellee had pointed a gun at her. Robert Stanovich testified appellant told him she was concerned about appellee harming himself with his guns. Emily Garrett testified appellant did not state appellee had pointed a gun at her.

The jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Keller*, 168 S.W.3d at 819. We may not substitute our judgment for the fact-finder's. *See Maritime Overseas*, 971 S.W.2d at 407. Applying a legal sufficiency standard, we conclude the evidence in the record would allow a reasonable and fair-minded jury to find appellee did not commit an act against another member of the family that was intended to result in physical harm. *See Keller*, 168 S.W.3d at 827. Appellant's first issue is decided against her.

When reviewing the factual sufficiency of evidence, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain*, 709 S.W.2d at 176. Here, appellant testified that on October 31, 2003, appellee pointed a gun at her. In addition, appellant testified she wrestled two guns away from appellee. However, appellant did not call the police. Moreover, appellant left the parties' child alone with appellee immediately following the alleged assault and on additional occasions over the following month. Appellee testified he did not point a gun at appellant and acted only defensively on October 31, 2003. Although four witnesses spoke to appellant soon after the alleged assault, only one of those witnesses, appellant's mother, testified appellant told her appellee pointed a gun at her.

Determining the credibility of conflicting testimony was the sole province of the jury. *See Keller*, 168 S.W.3d at 819. Based on the record, we conclude the jury's finding of no family violence is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cameron*, 158 S.W.3d at 683.

Q. At any time during your almost seven-year marriage you-all [appellant and appellee] hadn't had physical altercations?
A. No.
Further, during cross-examination, appellant testified as follows:

Q. Now, other than whatever happened October 31, 2003 has—you've already testified Mr. Hinkle was not violent towards you at any other time; is that correct?
A. Correct.

Appellant's second issue is decided against her.

### III. DENIAL OF MOTION FOR NEW TRIAL

In her third issue, appellant asserts, "Family violence keeps a parent from being appointed Joint Managing Conservator and a history of family violence by Mr. Hinkle existed and the jury's finding should be disregarded. The Trial Court erred in failing to grant the new trial. The Trial Court ruling appointing the Appellee as Joint Managing Conservator should be reversed and Appellant be appointed as Sole Managing Conservator." Appellant does not provide specific argument and authority for this issue. Further, appellee does not specifically address this issue on appeal.

■■■ We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *El Dorado Motors, Inc. v. Koch,* 168 S.W.3d 360, 368 (Tex. App.-Dallas 2005, no pet.) (citing *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss,* 121 S.W.3d 715, 721 (Tex. 2003)). Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). There is generally no abuse of discretion when there is some evidence to support the trial court's decision. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Every reasonable presumption will be made on review in favor of the trial court's refusal of a new trial. *El Dorado Motors,* 168 S.W.3d at 368.

■■■ Review of a trial court's action under the abuse of discretion standard is a question of law. *Id.* Legal and factual sufficiency of the evidence are relevant factors to consider when determining whether the trial court abused its discretion. *Pickens v. Pickens,* 62 S.W.3d 212, 214 (Tex.App.-Dallas 2001, pet. denied); *Dunn v. Dunn,* 177 S.W.3d 393, 396 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).

■■■ In this case, as determined above, the evidence in the record is legally and factually sufficient to support the jury's finding of no "history or pattern of committing family violence" by appellee. Thus, because there is "some evidence" to support the trial court's decision to deny appellant's motion for new trial, we conclude that decision was neither arbitrary nor unreasonable. *See Walker,* 827 S.W.2d at 840. Accordingly, the trial court's decision to deny appellant's motion for new trial did not constitute an abuse of discretion. We decide appellant's third issue against her.

### IV. CONCLUSION

Applying a legal sufficiency standard, we conclude the evidence in the record would allow a reasonable and fair-minded jury to find appellee did not commit family violence. In addition, applying a factual sufficiency standard, we conclude the jury's finding of no family violence is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Finally, we conclude the trial court did not abuse its discretion in denying appellant's motion for new trial. Appellant's three issues are decided against her. The judgment of the trial court is affirmed.