**Trang PHAN, Appellant**

v.

**ADDISON SPECTRUM, L.P., Gullotto Group, Inc., Ebby Halliday Real Estate, Inc., Appellees.**

No. 05–06–01201–CV.

Court of Appeals of Texas, Dallas.

Feb. 7, 2008.

Trang L. Phan, Addison, pro se.

Dale E. Butler, Winstead Sechrest & Minick, P.C., Steven K. Terry, Newsom, Terry & Newscom, L.L.P., Dallas, for Appellees.

Before Justices RICHTER, FRANCIS and LANG–MIERS.

## OPINION

Opinion by Justice RICHTER.

Trang Phan appeals a traditional summary judgment granted in favor of Addison Spectrum, L.P. ("Builder") and a take-nothing judgment for Ebby Halliday Real Estate, Inc. and the Gullotto Group, Inc. (collectively, the "Realtors") arising from her purchase of a condominium. Phan raises four issues. First, she contends that the trial court erred when it granted summary judgment for the Builder on its affirmative defense of release. Phan's second and third issues complain that there was no evidence to support certain findings of fact in the take-nothing judgment. Finally, she contends that the trial court erred when it refused to admit expert testimony on attorney's fees she incurred. Finding no reversible error, we affirm the trial court's judgment.

## Background

During the Summer of 2003, Trang Phan decided to buy a unit in the Aventura Condominiums ("Complex") for $210,000. She executed a condominium purchase contract and tendered a deposit on July 17, 2003. During the period when she was negotiating her purchase, Phan was assisted by the Realtors whose agent, Jim Hair, officed at the Complex to show prospective buyers different units. It is undisputed that Jim Hair is the only representative of the Realtors with whom Phan had any substantive contact or communications. Phan's purchase closed on September 3, 2003. Under the terms of her condominium purchase contract, she became a member of the Aventura Condominium Association ("ACA") and agreed to be bound by the documents establishing and governing the ACA.

On August 29, 2003, five days before Phan took possession of her unit, the ACA filed suit ("ACA Suit") against the Builder and others for construction defects and fraudulent marketing.[1] In May 2005, the

---

1. Despite the fact that she has been licensed to practice law in three states, Phan did not read her purchase documents until after she moved in and did not learn of the ACA Suit

ACA secured a ruling that it "has standing to act of behalf of its individual unit owners and that [its] actions in this lawsuit will bind its individual unit owners...." Shortly thereafter, the ACA Suit was settled with the ACA receiving $4,570,000 and giving a release ("ACA Release") of all claims to the Builder. Phan received over $4,500 in cash and credited assessments from settlement of the ACA Suit. The Builder also made requested repairs to her unit.

A month before settlement of the ACA Suit, Phan sued the Builder and both Realtors on her own. As to the Builder, Phan's petition alleges breach of express and implied warranties relating to the condition of her unit. She asserts claims of fraud, fraud in a real estate transaction[2] and violations of the Texas Deceptive Trade Practices—Consumer Protection Act[3] against both the Builder and Realtors, and a claim for breach of fiduciary duty against the Realtors.

After settling the ACA Suit, the Builder moved for summary judgment against Phan on its affirmative defense of release. The trial court granted the Builder's motion for summary judgment, and, thereafter, dismissed all of Phan's claims against the Builder. Her case against the Realtors proceeded to a two-day bench trial and the trial court entered judgment that Phan take nothing on her claims. The trial judge timely issued findings of fact and conclusions of law.

## Discussion

### A. The Builder's Summary Judgment

■ Phan's first issue contends material fact issues should have prevented summary judgment for the Builder. In her brief, Phan does not state what material fact issues exist and, instead, argues that the trial court was wrong when it ruled that her claims are covered in, and barred by, the ACA Release. Accordingly, we will address the legal question of the scope of the ACA Release.

■ The interpretation of the ACA Release is a question of law to be reviewed de novo. *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999); *Mem'l Med. Ctr. of East Texas v. Keszler*, 943 S.W.2d 433, 434 (Tex.1997); *First Trust Corp. TTEE FBO v. Edwards*, 172 S.W.3d 230, 233–34 (Tex.App.-Dallas 2005, pet. denied)("[s]ince the construction of an unambiguous agreement is a matter of law, we examine the trial court's ruling de novo"). A release that is valid on its face and has not been set aside is a complete bar to any later action based on matters covered by the release. *Deer Creek Ltd. v. N. Am. Mortgage Co.*, 792 S.W.2d 198, 201 (Tex.App.-Dallas 1990, no writ). Consequently, the ACA Release bars Phan's lawsuit if her individual claims are covered. We look at a release in the same way as other contracts. *Stroop v. N. County Mut. Ins. Co.*, 133 S.W.3d 844, 851 (Tex.App.-Dallas 2004, pet. denied) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990)). Therefore, the primary effort is to ascertain and give effect to the intention of the parties to the release. *Id.*; *Coats v. Ruiz*, 198 S.W.3d 863, 879 (Tex.App.-Dallas 2006, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)).

The ACA was organized under the Texas Uniform Condominium Act. TEX. PROP.

---

until "a few months" after she moved in when she "started meeting people."

2. TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 2002).

3. TEX. BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon 2002) ("DTPA").

CODE ANN. §§ 82.001–82.164. (Vernon 2007). Section 82.102(a) provides that an association, acting through its board, may

\* \* \*

(4) institute, defend, intervene in, **settle or compromise** litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the [Complex];

\* \* \*

(20) exercise any other powers conferred by the declaration or bylaws;

(21) exercise any other powers that may be exercised in this state by a corporation of the same type as the association; **and**

(22) **exercise any other powers necessary** and proper for the government and operation of the association.

TEX. PROP.CODE ANN. § 82.102(a) (Vernon 2007) (emphasis added).

The ACA initiated its lawsuit as "Attorney–in–Fact for each Owner" to address design and construction defects in "[b]oth the common areas and the individual units at Aventura." When the ACA and the Builder settled, the ACA received $4,570,000. Phan admits that she received at least $4,500 in cash and credited assessments from the settlement. The record does not reflect if she ever requested or obtained a copy of the ACA Release.

In exchange for the settlement proceeds, the ACA, acting on behalf of itself and its members, released the Builder:

of and from any claims, demands, causes of action, damages, injuries, losses, lawsuits, obligations respecting, related to, or arising out of, whether in whole or in part, whether now known or hereafter discovered, the design, construction, marketing, sales and administration of

the [Complex], ... and all claims, demands, causes of action, damages, injuries, losses and obligations raised or which could have been raised in the [ACA Suit]. This release is entered into by [the ACA], acting through its Board of Directors, in its own name **and on behalf of all of its unit owners,** pursuant to Section 82.102(a)(4) of the Texas Property Code and Article IV, Section 4.1 of The Condominium Declaration for Aventura, a Condominium. (emphasis added).

The agreement settling the ACA Suit also states that "[i]t is the **express intent** of the Parties that the terms of this Settlement Agreement and Mutual Release **are binding upon all unit owners** at Aventura pursuant to Section 82.102(a)(4) of the Texas Property Code and Article IV, Section 4.1 of The Condominium Declaration for Aventura, a Condominium"[4] (emphasis added).

Phan does not dispute her membership in the ACA or that the organization could settle claims related to the Complex's common areas. Instead, she argues that the language of the ACA Release does not cover her individual claims. The quoted portions of the ACA Release, however, clearly show that the parties who signed that document intended to cover claims arising from defects in the common area and the individual units. The recitals also indicate that the ACA thought it had the capacity to settle the claims of its members "whether known or unknown" and its disbursement of settlement proceeds to its members, including Phan, evidences its efforts to remedy the claims of individual unit owners.

---

4. The Condominium Declaration for Aventura is not part of the record and, thus, not at issue in this appeal.

Phan argues that the ACA did not have standing to settle her individual claims. However, a release is effective both against named parties and "parties that are described in the release with such descriptive particularity that their identity is not in doubt." *Keszler*, 943 S.W.2d at 434. By virtue of her ownership of her unit, Phan is a member of the ACA. Under Texas Property Code § 82.102, she therefore consented to allow the ACA to bring and settle the ACA Suit in its own name and on her behalf. TEX. PROP.CODE ANN. § 82.102 (Vernon 2007). The May 2005 ruling in the ACA Suit confirmed that the ACA had standing to act on behalf of its individual unit owners. The ACA Release specifically states that the ACA is acting in its own name and on behalf of all its unit owners with the express intent that the settlement be binding upon all unit owners in accordance with the Texas Uniform Condominium Act. Because a valid release is a complete bar to claims it covers, we overrule Phan's first issue.

### B. Phan's Evidentiary Insufficiency Complaints

■ The trial judge issued the following factual findings which are pertinent to Phan's appeal:

6. [Phan] has failed to prove by a preponderance of the evidence that [Realtors] or Jim Hair made any false statements of material fact concerning [Phan's Unit], the Aventura or the [ACA].

7. At all times material to the issues in this case, [Realtors] and Jim Hair did not have actual knowledge of any material defect in [Phan's Unit] or the Aventura condominium complex.

8. [Realtors], including Jim Hair, did not conceal or fail to disclose to [Phan] any material fact concerning [Phan's

Unit], the Aventura condominium complex or the [ACA].

9. [Realtors], including Jim Hair, did not breach their duty as a real estate intermediary for [Phan] in the transaction whereby she purchased [her unit].

10. [Phan] failed to prove by a preponderance of the evidence that [Realtors] committed any act in violation of the [DTPA].

16. [Builder] sold Jim Hair a condominium unit at Aventura that was similar to [Phan's] for $150,000.00 during the closeout phase of the project which was below the fair market value for such unit.

19. [Phan] failed to disclose in pretrial discovery that she was seeking to recover damages from Ebby Halliday, Inc. or the Gullotto Group, Inc. related to the contractual warranty claims she made against [the Builder].

■ In her second issue, Phan argues there is no evidence to support findings 6, 7, 8, 9 and 10 "because [she] conclusively proved that Hair had knowledge of "design and construction defects" connected to [her unit] and the Aventura Condominium, and failed to disclose such material and relevant facts to [her] at anytime [sic] prior to the closing date of September 3, 2003." A "no evidence" or legal insufficiency point is a question of law that challenges the legal sufficiency of the evidence to support a particular fact-finding. *Hinkle v. Hinkle*, 223 S.W.3d 773, 777–78, (Tex.App.-Dallas 2007, no pet.).

■ When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (citing *Sterner v. Marathon Oil*

*Co.,* 767 S.W.2d 686, 690 (Tex.1989)). In reviewing a "matter of law" challenge, we first examine the record for evidence that supports the factual finding, while ignoring all evidence to the contrary. *Id.; McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex.1986); *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982); *Hinkle,* 223 S.W.3d at 777–78. Thereafter, we find error only if the contrary proposition is conclusively established. *Dow Chem.,* 46 S.W.3d at 241 (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983)).

Here, Phan has the burden of proof on her affirmative claims. So we must consider and weigh all of the evidence, and set aside the trial court's findings only if the evidence supporting such fact-findings is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cameron v. Cameron,* 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied).

The Realtors' representative, Jim Hair, testified that he was only aware of minor complaints by some existing owners and did not receive notice of any demand by the ACA or threatened lawsuit until after he submitted Phan's contract to the Builder. Once Hair sent Phan's contract to the Builder, the Builder took over communications with Phan. Hair also testified that he did not see any demand letter from the ACA's lawyer until after Phan filed her lawsuit in April 2005 and that he only became aware of defects alleged in the ACA Suit after the collective body filed its case. Accordingly, there was sufficient evidence for the trial judge to find that Hair and his principals, the Realtors, did not have actual knowledge of material construction defects and that he did not withhold any material information from Phan.

In contrast, Phan testified that she believed Hair must have known about the ACA's complaints on July 17, 2003 when she signed her condominium purchase agreement. In support of her belief, she offered a notice attached to a contract dated July 17, 2003 between the Builder another purchaser that states "certain Unit Owners in the [Complex] have made claims against the [Builder] and other parties alleging certain design and/or construction defects with respect to their Units and the common elements of the [Complex]. [Builder] is currently investigating these claims in an effort to resolve the issues with the Unit Owners." This notice was created and sent by the Builder to the other purchaser. Phan did not offer any evidence that Hair or any other agent of the Realtors saw the notice before she signed her condominium purchase agreement, knew about the complaints made by "certain Unit Holders" against the Builder, or what "certain design and/or construction defects" were the subject of those complaints.

To the extent there were any conflicts between the testimony given by Phan and Hair, it was the sole province of the trial judge as fact-finder to determine the credibility of each witness. *Hinkle,* 223 S.W.3d at 777–78 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005)); *McGalliard,* 722 S.W.2d at 697 ("The trier of fact has several alternatives available when presented with conflicting evidence. It may believe one witness and disbelieve others."). Simply put, the trial court believed Hair and found "[he] did not have actual knowledge of any material defect in [Phan's Unit] or the Aventura condominium complex." We resolve Phan's second issue against her.

■ Phan's third issue attacks the trial judge's findings of fact 16 and 19, the resulting legal conclusion on the measure of damages to be recovered by Phan, and the exclusion of testimony on her conse-

quential damages. Specifically, Phan contends the trial court was wrong in rejecting her measure of damages for the recovery she sought[5]. However, when a fact-finder finds no liability and its finding is supported by the evidence, any failure to submit or to award damages is immaterial or harmless. *See, e.g., Merckling v. Curtis*, 911 S.W.2d 759, 767 (Tex. App.-Houston [1st Dist.] 1995, writ denied); *Ramirez v. Otis Elevator Co.*, 837 S.W.2d 405, 413 (Tex.App.-Dallas 1992, writ denied); *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 306 (Tex.App.-Eastland 1991, writ denied) (noting in the absence of liability, a damages question becomes immaterial). Because we have concluded there was sufficient evidence to support the trial court's findings on the elements of her claims, any error in the exclusion of evidence of her damages or components of her potential recovery would be harmless. Thus, we overrule Phan's third issue.

## C. The Trial Court's Refusal to Admit Expert Testimony

■ In her fourth issue, Phan states that the trial court erred in precluding her testimony concerning attorney's fees. The record reflects the trial court excluded the testimony because Phan failed to disclose any experts even though the Realtors sent her discovery asking for such disclosures. To each relevant request, Phan answered none or not applicable. She never supplemented her answers to indicate she would be offering expert testimony on any issue.

■ Whether to admit or exclude evidence is within the trial court's sound discretion. *Nat'l Liab. and Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000).

Specifically, the exclusion of expert testimony is reviewed for an abuse of discretion. *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex.2003); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex.2000). To determine if the trial court abused its discretion, we must decide whether the trial court "act[ed] in an arbitrary or capricious manner without reference to any guiding rules or principles." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).

Phan's fourth issue fails on two separate grounds. First, she never responded to propounded discovery requests that she would be offering expert testimony on any issue. Texas Rule of Civil Procedure 193.6 mandates the automatic exclusion of evidence that was not timely disclosed unless the party can show: (1) good cause for failing to timely disclose the information; or (2) that the failure to timely disclose the information "will not unfairly surprise or unfairly prejudice" the other party. TEX.R. CIV. P. 193.6(a); *Oscar Luis Lopez v. La Madeleine of Texas, Inc.*, 200 S.W.3d 854, 857 (Tex.App.-Dallas 2006, no pet.). When asked by the trial court why she never supplemented her discovery responses, Phan gave no reason and made no showing that her failure to disclose any experts would not unfairly surprise or prejudice the Realtors.

■ Second, Phan's amended petition bases her request for attorney's fees on her claims under the DTPA and the statute governing fraud in a real estate transaction. DTPA § 17.50(d); TEX. BUS. & COM. CODE ANN. § 27.01(e) (Vernon 2002). Since she prevailed on neither claim, she is not entitled to recover any attorney's fees.

---

**5.** The trial court's seventh conclusion of law states "[t]he measure of damage sought by Plaintiff; to wit: the difference in the purchase price paid by Plaintiff for Unit 734 and the purchase price paid by Jim Hair for his Aventura unit, was not the proper measure of damage."

*Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 315 (Tex.App.-Dallas 2006, no pet.) ("A party must satisfy two requirements to obtain an award of attorney's fees: (1) he must prevail on a cause of action for which attorney's fees are recoverable **and** (2) he must recover damages.") (emphasis added). Accordingly, even if the trial court should have admitted the proffered testimony, any such error would be harmless. TEX.R.APP. P. 44.1; *Ramirez*, 837 S.W.2d at 413. *See also Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 147–48 (Tex.App.-Corpus Christi 2006, pet. denied)("Because we have concluded that [Defendant] established its entitlement to judgment as a matter of law on the counterclaims asserted against it for money damages, any fact issue on damages is immaterial . . . [t]hus, any error by the trial court in excluding the expert testimony would necessarily be harmless.").

Our review of the record, therefore, does not indicate that the trial court abused its discretion by refusing to admit the proffered testimony on recoverable attorney's fees. Phan's fourth issue is resolved against her.

## Conclusion

Having overruled all of Phan's issues, we affirm the trial court's judgment.