

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00407-CV

_____

IN THE INTEREST OF A.T., A CHILD

---

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 21-6160-367

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant B.T. (Father) raises four issues, one of which is dispositive: he challenges the appointment of Appellee D.C. (Mother) as sole managing conservator of their daughter, A.T. (Andrea).[1]  Because the trial court declined to make a family-violence finding to support its appointment of Mother as sole managing conservator, and because there was insufficient evidence to overcome the statutory joint-managing-conservatorship presumption in the absence of a family-violence finding, we will reverse and remand.

## I. Background

Mother and Father were never married, and they have one child together: Andrea.

## A.    Early Years

At all relevant times, Father owned and lived on a large plot of land, with three homes on his property.  Mother and Andrea lived with him for the first six years of Andrea's life, until late 2019.  Mother's son E.C. (Evan) also lived there for a portion

---

[1] To protect the identities of the child and parties, we refer to them using initials and aliases.  *See* Tex. Fam. Code Ann. § 109.002(d); *cf.* Tex. R. App. P. 9.8(b) (providing for the use of aliases to protect a minor's identity in certain cases), 9.9(a)(3) (defining sensitive data to include the name of a minor).

of that time, as did Father's parents, Father's aunt, Father's oldest daughter, and that daughter's mother—M.R. (Mona).[2]

Father's technology-related job required him to work long hours and provided the primary income for the household.  Mother initially worked as a flight attendant, but as Andrea grew older, Mother reduced her hours and ultimately quit her job to take care of her.

## B.    Alleged Assault

In December 2019, Mother and Father got into an argument.[3]  According to Mother, during the argument, she had "tr[ied] to lock the bathroom door to stay away from him," but he opened the door, and the door hit her in the face and chipped her tooth.  When she "tr[ied] to crawl . . . through the window to get away from

---

[2]Father testified that his oldest daughter—the daughter shared with Mona—has a disability.  Father is the sole provider for that daughter, and she moved into Father's house so he could help take care of her.  Mona moved in to take care of the oldest daughter as well, and because Father's parents were "aging," Mona also helped provide them with "hospice care."  By the time of trial, at least one of Father's parents had passed away.

[3]Mother testified that the argument began after Evan had contracted the flu while she was out of town on an overnight airline trip.  The two argued because while she was gone, Father had taken Evan to a different hospital than the hospital Mother had told him to go to.

[him], . . . he yanked [her] back in," leaving bruising on her legs. Father was charged with assault family violence.[4]

Mother moved out of the compound the night of the incident, and she and Father informally agreed to a "week-on-week-off" custody schedule for Andrea.

## C.    Litigation

Mother subsequently filed a suit affecting the parent–child relationship (SAPCR) seeking to be appointed as Andrea's sole managing conservator based on Father's "ha[ving] engaged in a history or pattern of family violence, as defined by [S]ection 71.0004 [sic] of the Texas Family Code." [Italics removed.] *See* Tex. Fam. Code Ann. § 71.004 (defining "[f]amily violence"). Mother sought temporary orders for child support and an order for ongoing child support as well.[5] Father counter-petitioned with similar requests; he sought to be appointed as sole managing conservator based on Mother's "history or pattern of child neglect" and he sought temporary and ongoing child support.

---

[4]Father was initially arrested for felony aggravated assault causing serious bodily injury and misdemeanor interference with an emergency request for assistance, but he was ultimately charged with misdemeanor assault family violence.

[5]At some point, the trial court ordered Father to pay temporary child support, but the order is not in the record. At trial, the parties' counsel referenced the temporary child-support order, and both parties appeared to agree that Father had paid the amounts ordered.

**D. Bench Trial**

Father and Mother were the primary witnesses during the relatively short bench trial.

Father alleged that Mother had a drinking problem, claiming that he would come home from work and find empty "single-serve airline bottles" of alcohol hidden in the house.[6] He also expressed concern regarding Mother's unclean housekeeping practices. Father stated that, when Mother lived at his home, he observed Evan's used diapers on the floor of Mother's living area,[7] feces on the floor or wall, and food and papers in general disarray.

Mother denied these allegations. She countered with testimony of Father's alleged assault, and she offered (and the trial court admitted) photographs of her injuries, along with various court filings from Father's criminal case, which was still pending at the time of the SAPCR trial. The court filings included a probable-cause affidavit summarizing the incident. In that affidavit, the affiant recited Mother's allegation that Father had caused her bodily injury by opening the bathroom door such that it hit her in the face. Other details in the probable-cause affidavit slightly differed from Mother's trial testimony, though; the affidavit did not mention Father's

---

[6]Father recalled that Andrea drank from one of the single-serve bottles and became ill.

[7]Mother explained that when Evan was 10 years old, he wore pull-ups because he wet the bed. She stated that when Evan took showers, he left his clothes—including his diaper—on the floor of the bathroom.

pulling Mother out of the window or causing bruising to her leg, and it referenced other alleged injuries that Mother did not describe in court.

Additionally, on cross-examination, Mother conceded that she had downplayed Father's alleged assault during her online conversations with Evan's dad (with whom she was separately engaged in litigation).[8] These online conversations—copies of which were admitted into evidence—showed that Mother had contrasted Father's "smacking [her] on the head" with Evan's dad's "tr[ying] to break [her] neck." Mother went on to tell Evan's dad that Father was a "normal intelligent person" who "ha[d] always been there for his daughter," "[wa]s a good father," and was "completely shocked with how many weekends [Evan's dad] gave up" with his child.

As for caregiving, Mother testified that she had been Andrea's primary caregiver. Although the informal "week-on-week-off" custody schedule was still in place at the time of trial, Mother predicted that, due to Father's demanding job, if Father were to have primary caregiving responsibilities, Mona—not Father—would provide most of the caregiving.

Father emphasized the accommodations that he could offer Andrea. The main house on his property contained five bedrooms, one of which was Andrea's. Mother, meanwhile, lived in a trailer with Evan and three cats, and Andrea shared Mother's

---

[8]Mother further acknowledged that, in her litigation with Evan's dad, the court had entered temporary orders taking away her right to make medical decisions for Evan. The reason for this change was not explained, though. And although the trial court later asked the attorneys questions about this order, the order was not admitted into evidence.

6

bed. Father testified that he had offered to purchase a home for Mother, Evan, and Andrea to live in until Andrea turned 18 but that Mother had declined the offer.

The parties also presented evidence regarding their disparate work schedules and incomes. Mother was working for Instacart at the time of trial; she had flexible hours and took Andrea and Evan with her when she made grocery deliveries. Mother provided pay summaries reflecting income ranging from about $50 to $550 per week. Father, meanwhile, testified that he worked as a government contractor in a "high level IT position" and that he made approximately $175,000 per year.

## E.    Judgment

At the end of the trial, the court announced its ruling. It stated that it would "not mak[e] any finding of family violence one way or the other" but that it was "appoint[ing Mother] as sole[ ]managing conservator of the child" and appointing Father as possessory conservator. The court later reduced its initial ruling to a written order, which also awarded Mother monthly child support of $1,840 and found that Father owed $20,240 for past child support.[9]

Neither party requested findings of fact or conclusions of law, and the trial court did not file any. *See* Tex. R. Civ. P. 296, 297.

---

[9]The portion of the trial court's order addressing past child support is entitled "Child Support Arrearages" and repeatedly refers to the $20,240 award as arrearages. But the parties describe the $20,240 award as "retroactive child support" and are in agreement that it was intended as such. Indeed, it appears to have been undisputed at the bench trial that Father had paid all amounts ordered by the trial court up until that point. And while Mother requested additional retroactive child support, she did not mention any arrearages.

## II. Discussion

Father raises four issues,[10] but we need only address one to resolve this appeal: whether the trial court abused its discretion by appointing Mother as sole managing conservator. *See* Tex. R. App. P. 47.1.

### A. Conservatorship

Father argues that because the trial court did not make a family-violence finding, there was insufficient evidence to support the trial court's appointment of Mother as sole managing conservator.

### 1. Standard of Review

Conservatorship determinations are reviewed for an abuse of discretion. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re E.D.*, No. 02-20-00208-CV, 2022 WL 60781, at *10 (Tex. App.— Fort Worth Jan. 6, 2022, no pet.) (mem. op.); *C.W. v. B.W.*, No. 02-19-00270-CV, 2020 WL 4517325, at *2 (Tex. App.—Fort Worth Aug. 6, 2020, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, meaning that it acts without reference to any guiding rules or principles. *J.J.R.S.*, 627 S.W.3d at 218; *E.D.*, 2022 WL 60781, at *10–11; *C.W.*, 2020 WL 4517325, at *2.

---

[10]Father (1) challenges the appointment of Mother as sole managing conservator of Andrea; (2) challenges the trial court's award of "retroactive child support"; (3) challenges the exclusion of neglect-related evidence; and (4) alleges that the trial court was biased against him.

The sufficiency of the evidence is a factor in deciding whether the trial court abused its discretion. *C.W.*, 2020 WL 4517325, at *2; *In re J.M.*, No. 02-16-00428-CV, 2017 WL 3821863, at *3 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op.). "As long as some evidence of a substantive and probative character supports the trial court's decision, it does not abuse its discretion." *E.D.*, 2022 WL 60781, at *11; *see C.W.*, 2020 WL 4517325, at *2. But if the trial court's ruling is not supported by legally and factually sufficient evidence, then it abuses its discretion. *See E.D.*, 2022 WL 60781, at *11; *C.W.*, 2020 WL 4517325, at *2.

### 2. The Law on Conservatorship

In our review of a trial court's discretionary ruling on a conservatorship issue, the primary consideration is always the best interest of the child. *E.D.*, 2022 WL 60781, at *12, *16; *C.W.*, 2020 WL 4517325, at *3; *J.M.*, 2017 WL 3821863, at *3; *see* Tex. Fam. Code Ann. § 153.002. The trial court has wide latitude in determining the child's best interest, and it may consider a variety of factors in doing so. *See* Tex. Fam. Code Ann. § 153.134(a); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing nonexhaustive factors). Such factors include the child's physical and emotional needs, the parties' plans for the child, and the stability of the home. *See Holley*, 544 S.W.2d at 371–72; *see also* Tex. Fam. Code Ann. § 153.001(a)(2) (codifying "public policy of this state . . . [to] provide a safe, stable, and nonviolent environment for the child").

Generally, Texas encourages "co-parenting." *C.C. v. L.C.*, No. 02-18-00425-CV, 2019 WL 2865294, at *16 (Tex. App.—Fort Worth July 3, 2019, no pet.) (mem.

9

op.) (noting that "the [F]amily [C]ode embodies the policy of co-parenting with its rebuttable presumption that joint managing conservatorship is in the best interest of the child"). It is the "public policy of this state . . . [to] assure that children will have frequent and continuing contact with [their] parents" and to "encourage parents to share in the rights and duties of raising their child after the parents have separated." Tex. Fam. Code Ann. § 153.001(a)(1), (3). Thus, there is "a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." *Id.* § 153.131(b).

But this presumption is removed—and the trial court is prohibited from appointing the parents as joint managing conservators—if the trial court makes "[a] finding of a history of family violence[11] involving the parents of a child."[12] *Id.* §§ 153.004, .131(b); *see id.* § 153.005(c)(1) (stating that, in appointing sole or joint managing conservator, the trial court shall consider whether the "party engaged in a

---

[11]Although "family violence" is not defined in Section 153.131, related provisions of the Family Code use the definition provided in Section 71.004, which defines "family violence" to include, as relevant here, "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, [or] assault" or "is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, [or] assault," with "defensive measures to protect oneself" excluded. Tex. Fam. Code Ann. § 71.004(1).

[12]Because a family-violence finding reflects that the evidence of physical abuse is credible, *Baker v. Baker*, 469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2015, no pet.), it not only bars the trial court from appointing the parents as joint managing conservators but also creates rebuttable presumptions that (1) appointment of the abusive parent as sole managing conservator is not in the child's best interest and (2) unsupervised visitation with the abusive parent is not in the child's best interest. *See* Tex. Fam. Code Ann. § 153.004(b), (e).

10

history or pattern of family violence"). The exception, we have observed, seems "to be based on the assumption that two people cannot be expected to cooperate to the extent necessary to co-parent when one of the parents has abused the other parent or a child." *C.C.*, 2019 WL 2865294, at *16 (discussing Section 153.131(b) along with related provision in Section 153.004(b) that prohibits joint managing conservatorship upon family-violence finding).

Otherwise, though, the party seeking to be appointed as sole managing conservator bears the burden to rebut the joint-managing-conservatorship presumption. *J.A.S. v. A.R.D.*, No. 02-17-00403-CV, 2019 WL 238118, at *4 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op.); *Hinkle v. Hinkle*, 223 S.W.3d 773, 779 (Tex. App.—Dallas 2007, no pet.). And given the policy interests involved, this burden is a weighty one. *See* Tex. Fam. Code Ann. § 153.001(a)(1), (3).

### 3. Analysis

Father argues that because the trial court did not make a family-violence finding, Mother was required to overcome the presumption favoring a joint managing conservatorship,[13] and the evidence was legally and factually insufficient to do so.

---

[13]Quoting from another provision of the Family Code, Father contends that, in the absence of a family-violence finding, the party seeking sole managing conservatorship must prove that appointing the parents as joint managing conservators "would significantly impair the child, either physically or emotionally." But this standard applies to nonparents. The relevant Family Code provision states that,

Mother does not appear to dispute that the trial court declined to make a family-violence finding,[14] but she contends that she offered legally and factually sufficient evidence to support the trial court's decision regardless.

---

unless the [trial] court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators.

Tex. Fam. Code Ann. § 153.131(a). This statute reflects a policy preference for the appointment of parents over nonparents. And the case law that Father cites applies this rule to situations in which a nonparent is seeking appointment as a managing conservator. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 165, 167 (Tex. 1990) (summarizing issue presented as determining "the standard to be applied when a nonparent seeks appointment as managing conservator of a minor child"); *In re C.A.M.M.*, 243 S.W.3d 211, 215–16 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (quoting *Lewelling* in case involving grandparents as joint managing conservators and noting that significant-impairment requirement does not apply to modification proceedings).

When, as here, the parties fighting over conservatorship are the parents, nothing in the above-quoted statutory provision expresses a preference for a joint managing conservatorship over a sole managing conservatorship. *See* Tex. Fam. Code Ann. § 153.131(a).

[14]Indeed, when the trial court announced its ruling, it expressly stated that it was "not making any finding of family violence one way or the other." *Cf. J.M.*, 2017 WL 3821863, at *4–5 (holding trial court abused its discretion by appointing parents as joint managing conservators when trial court stated on the record that there had been a history of family violence and undisputed evidence showed physical abuse). Although this comment was not equivalent to a finding of fact or conclusion of law, it underscored the trial court's conscious decision to not issue an affirmative family-violence finding. *See id.* at *4–5 & n.8 (reversing trial court when no findings or conclusions were filed and noting that, while on-the-record statement confirming family violence did not constitute a finding, that statement combined with the undisputed evidence of abuse supported reasonable conclusion that trial court believed the family-violence evidence); *cf. In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.

12

Because there was no family-violence finding, Mother bore the burden to rebut the statutory presumption that appointing her and Father as joint managing conservators was in Andrea's best interest. *Id.* § 153.131(b); *see J.A.S.*, 2019 WL 238118, at \*4; *Hinkle*, 223 S.W.3d at 779. Mother claims she rebutted this

---

1984) ("The court of appeals was not entitled to look to any comments that the judge may have made at the conclusion of a bench trial as being a substitute for findings of fact and conclusions of law."); *In re W.S.*, 899 S.W.2d 772, 780 (Tex. App.—Fort Worth 1995, no writ) (rejecting argument that trial court's comments were implied findings of fact). *But see Madore v. Strader*, No. 14-20-00147-CV, 2021 WL 4617936, at \*8 (Tex. App.—Houston [14th Dist.] Oct. 7, 2021, no pet.) (mem. op.) (holding appellants were not prejudiced by failure to file findings and conclusions when trial court verbalized its reason for deviating from the standard possession order and stating that "oral findings have probative value as long as they do not conflict with those in a separate document").

And while the trial court framed its ruling in a neutral fashion—declining to decide "one way or the other"—removal of the joint-managing-conservatorship presumption required an affirmative finding, *see* Tex. Fam. Code Ann. § 153.131(b), so the trial court's "not making any finding" was a decision to leave the presumption in place. *Cf. In re F.A.*, No. 02-16-00156-CV, 2017 WL 632913, at \*5 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (mem. op.) (affirming denial of access in case without findings or conclusions and noting that exceptions to denial of access required findings and the trial court "made no such findings"). *But see In re K.L.S.*, No. 11-21-00094-CV, 2022 WL 401474, at \*4–8 (Tex. App.—Eastland Feb. 10, 2022, no pet.) (mem. op.) (affirming trial court's appointment of father as sole managing conservator based on implied finding of a history of family violence by mother); *Heiskell v. Kendrick*, No. 14-06-00972-CV, 2007 WL 3072002, at \*2 n.1, \*4 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) (affirming trial court's order appointing grandparents as joint managing conservators based on implied finding of a history of family violence and noting that, although trial court did not make "an explicit affirmative finding," it stated on the record that the Family Code requirements had been satisfied); *but cf. Burns v. Burns*, 116 S.W.3d 916, 921–22 (Tex. App.—Dallas 2003, no pet.) (concluding that appellant's failure to give notice of past-due findings waived argument that trial court was required to issue a "find[ing]" under Family Code Section 153.004(d)(1)).

13

presumption by offering evidence of family violence—the "court papers" from Father's criminal case and the photographs evidencing her injuries.

But the trial court's decision not to issue a family-violence finding reflects that it did not credit this evidence as "ris[ing] to the level of a [']history [of family violence'] that disqualifies [Father] from being appointed as a joint managing conservator."[15] *C.C.*, 2019 WL 2865294, at *17 (concluding that a single act may, but does not necessarily or conclusively, constitute a "history of family violence" and explaining that "the word 'history' . . . leaves the trial court with the discretion to decide whether a parent's acts rise to the level of a history that disqualifies him or her from being appointed as a joint managing conservator"); *see* Tex. Fam. Code Ann. §§ 153.004(b), .131(b); *cf. J.M.*, 2017 WL 3821863, at *4 & n.8 (explaining that trial court's comment regarding family violence, combined with undisputed testimony regarding physical abuse, supported reasonable conclusion that trial court chose to believe evidence of family violence). And apart from the alleged assault, Mother has not identified any "substantive and probative" evidence that satisfied her evidentiary burden. *See E.D.*, 2022 WL 60781, at *11.

Nor does the record reveal any such evidence. Although Mother criticized Father for working long hours and testified that he would likely rely on Mona to help

---

[15]We do not minimize the seriousness of Father's alleged conduct, nor do we comment on his criminal case. If Father's criminal case proceeds to trial, the State may offer additional evidence to prove its assault family violence charge against him. Our discussion of the assault-related evidence is limited to the record in this case and viewed in light of the trial court's decision to not issue a family-violence finding.

care for Andrea, Mother did not allege that Father left Andrea unsupervised when he was at work or that he failed to provide for Andrea's needs. *See Holley*, 544 S.W.2d at 371–72 (listing best-interest factors including the physical needs of the child). In fact, from the record, it appears that Father's job is what allowed him to provide for Andrea's needs and to offer her a stable home. *Cf. id.* (listing best-interest factors including the stability of the home). A parent's demanding job—standing alone without evidence of that job having a negative impact on the child—does not overcome the statutory presumption favoring a joint managing conservatorship.

Moreover, Mother appeared to concede that Father provided for Andrea's emotional needs as well. *See id.* (listing best-interest factors including the emotional needs of the child). In her online conversations, Mother described Father as "a good father" who "ha[d] always been there for his daughter." *Cf.* Tex. Fam. Code Ann. § 153.134(a)(4) (listing best-interest factors including "whether both parents participated in child rearing before the filing of the suit"); *Holley*, 544 S.W.2d at 371–72 (listing best-interest factors including the emotional needs of the child and the "parental abilities" of the parent). And Mother's counsel reiterated this concession during closing arguments, stating that "he is a good father" and that Mother was "not asking that his time be supervised or in any way limited."

Absent a family-violence finding, then, there was insufficient "substantive and probative" evidence to rebut the statutory presumption favoring a joint managing

15

conservatorship.[16]  *See E.D.*, 2022 WL 60781, at \*11; *cf. Arevalo v. Fink*, No. 01-19-00822-CV, 2020 WL 5778813, at \*3–4 (Tex. App.—Houston [1st Dist.] Sept. 29, 2020, no pet.) (holding evidence insufficient to overcome joint-managing-conservatorship presumption when father failed to appear at trial and mother offered minimal testimony regarding child, no testimony regarding the parents' circumstances, and conclusory testimony that appointing her as sole managing conservator was in the child's best interest).  Accordingly, the trial court abused its discretion by appointing Mother as sole managing conservator and appointing Father as possessory conservator.  We sustain Father's first issue and reverse the trial court's conservatorship determinations.

## B.  Child Support

Furthermore, because the issues of conservatorship and child support are interrelated, we cannot be reasonably certain that the trial court's child-support determinations were not significantly affected by its error regarding conservatorship. *See Kahn v. Kahn*, 813 S.W.2d 708, 710 (Tex. App.—Austin 1991, no writ) (holding trial court erred in awarding lump-sum child support and concluding that, "[b]ecause the

---

[16]Apart from the factors and evidence already discussed, Mother has not identified any other best-interest factors to support the trial court's appointing her sole managing conservator. *See* Tex. Fam. Code Ann. § 153.134(a) (listing additional factors such as the parents' ability to reach shared decisions, each parent's ability to encourage a positive relationship with the other, and the geographical proximity of the residences); *Holley*, 544 S.W.2d at 371–72 (listing additional factors such as the programs available to help the parents, any parental conduct indicating that the parent–child relationship is improper, and any excuse for the parent's improper conduct).

issues of property division, child support, and visitation in the divorce decree are interrelated, we will reverse these aspects of the decree"); *see also Ramirez v. Sanchez*, No. 01-21-00417-CV, 2023 WL 2919545, at *9–10 (Tex. App.—Houston [1st Dist.] Apr. 13, 2023, no pet.) (mem. op.) (noting that "the issues of conservatorship . . . and child support are interrelated" and remanding entire case when trial court's erroneous pretrial rejection of father's petition for modification prevented full development of record); *Baltzer v. Medina*, 240 S.W.3d 469, 478 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reversing award of attorney's fees that trial court assessed "in the nature of child support" because court was "not reasonably certain that the trial court's [fee] determination was not significantly affected by its errors"); *cf. Bruni v. Bruni*, 924 S.W.2d 366, 368–69 (Tex. 1996) (reversing award of attorney's fees to allow trial court to reconsider when "the trial court premised its judgment on erroneous conclusions of law about the enforceability of the parties' agreement to provide child support past age eighteen"). Therefore, having reversed the trial court's conservatorship determinations, we reverse its determinations of past and ongoing child support for reconsideration as well. *See* Tex. R. App. P. 43.3(b) (authorizing remand when "the interests of justice require a remand for another trial"); *J.M.*, 2017 WL 3821863, at *5 (holding trial court erred by appointing parents as joint managing conservators and reversing "for a new trial on conservatorship, access and possession, and child support" as a result).

### III. Conclusion

The trial court's final order is reversed, and the entirety of the case is remanded for a new trial.[17]  Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  June 15, 2023

---

[17]In Father's fourth issue, he argues that the trial court was biased against him, pointing to the numerous instances in which the trial court lectured or scolded him. In one instance, the court told Father "not [to] make up the rules"; in another it reminded him that the attorneys "actually graduated from law school[; y]ou did not"; and in another, it threatened to hold him in contempt and "promis[e]d" that "if you have decided you're just going to say whatever you want to say and answer a few questions in between, you're not going to be talking . . . . [and] you're going to have a real short day in court."  The trial court also repeatedly interrupted Father—and Mother—to sternly cut off what it considered nonresponsive testimony.

While the trial court's conduct was certainly not commendable, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless the trial court displays "a deep-seated favoritism or antagonism" that "make[s] fair judgment impossible."  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555–56, 114 S. Ct. 1147, 1157 (1994)).  And this is a very high bar.

Regardless, because Father asks us to remedy the alleged judicial bias by reversing and remanding for a new trial, because we are already reversing and remanding due to the trial court's erroneous conservatorship determination, and because a different judge now presides over the 367th District Court, any error in the trial court's conduct will be cured upon remand, so we need not address this issue.  *See* Tex. R. App. P. 47.1.